**FILED**

**AUG 1 9 2014**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GEORGE RUSSELL REIFF, JR. AND AMY E. REIFF )<br>3117 Southgate Drive, #105 )<br>Alexandria, VA  22306 )<br>(703) 660-6941 | |

                 *Plaintiffs,*

Case: 1:14−cv−01413
Assigned To : Chutkan, Tanya S.
Assign. Date : 8/19/2014   **JURY DEMAND**
Description: PI/Malpractice

        *v.*

**UNITED STATES OF AMERICA,**                          )
Serve:  United States Attorney General         )      **JURY TRIAL DEMANDED**
Room B-103                                                         )      **AGAINST DEFENDANTS**
950 Pennsylvania Avenue, NW                     )      **WHENEVER POSSIBLE**
Washington, DC  20530                                   )
                               )
Serve:  United States Attorney for the District of Columbia )
ATTN:  Civil Process Clerk                           )
555 Fourth Street, NW                                    )
Washington, DC  20530                                   )
                               )
**SHARON A. CASEY,**                                     )
3333 Bluejay Drive                                           )
Edgewood, KY  41018-2601                         )
                               )
**ADAM P. SWEET,**                                         )
26001 School Yard Court                             )
Damascus, MD  20872-1733, and            )
                               )
**UNKNOWN/UNIDENTIFIED INTERNAL REVENUE** )
**SERVICE EMPLOYEES,**                              )
               *Defendants.*     )

---

## COMPLAINT

### Preface.

      The principal purpose of this Complaint, aside from the pursuit of justice (from the plaintiffs'

perspective, anyway), is to ensure that this lawsuit moves into the discovery stage – nothing more.

Despite the seemingly-inordinate length of this civil action filing, the plaintiffs do not intend to explore each and every issue to its fullest extent here, as it is not the plaintiffs' purpose to try the entire case in this Complaint.  Consequently, not all allegations, arguments, and other material presented here are exhaustively treated by professional legal standards.  Additionally, the plaintiffs are filing this civil action *pro sésé* which will present unique challenges for the Court and other concerned parties. That said, though, the plaintiffs will do their very best to comply with the many legal rules and procedures which protect their rights and designate their responsibilities; plus those of the legal professionals who are on and who serve with the bench, those who represent the defendants, the defendants themselves, and those in auxiliary roles.  The plaintiffs greatly appreciate the opportunity to present their case before this Court.

**Table of Contents.**

| *Section* | *Page(-s)* |
|---|---|
| **Preface** | **i** |
| **Table of Contents** | **ii** |
| **Table of Authorities** | **iii** |
| **Introduction** | **1** |
| **Federal Tort Claims Act - Jurisdiction, Venue, Administrative Claim Exhaustion, and Sovereign Immunity Waiver Requirements** | **2** |
| ***Bivens* Claims - Jurisdiction, Venue, Administrative Claim Exhaustion, and Sovereign Immunity Waiver Requirements** | **6** |
| ***Bivens* Claims – Plaintiffs' Demand for Jury Trial** | **13** |
| **Statutes of Limitations for Filings Under the FTCA and *Bivens*** | **13** |
| **Parties in This Civil Action** | **13** |
| **Alleged Facts – Innocent Spouse Relief Request Determination** | **15** |
| **Summary of Specific Allegations** | **17** |

**Governing Official Procedures, Regulations, and Law**        **23**

**Defenses Against FTCA Claims (Overview) – Discretionary Function Exception (Sweet and Casey) 35**

**Immunities Against *Bivens* Claims (Overview) – Absolute Immunity (Sweet)**        **37**

**Immunities Against *Bivens* Claims (Overview) – Qualified Immunity (Sweet and Casey)**        **38**

**Charges Against Defendants by Count**        **40**

**Damages and Request for Relief**        **49**

**Conclusion**        **50**

**Exhibit 1 – Negotiated Agreement dated October 4, 2011**        **Exhibit 1**

**Exhibit 2 – Form Letter dated November 1, 2011 from Casey to the Plaintiffs re: Form 8857**        **Exhibit 2**

**Exhibit 3 – Plaintiffs' Response to Exhibit 2 dated December 1, 2011**        **Exhibit 3**

**Exhibit 4 – Sweet's July 25, 2012 Letter to the Plaintiffs**        **Exhibit 4**

**Exhibit 5 – Plaintiffs' August 13, 2012 Response to Exhibit 4**        **Exhibit 5**

**Table of Authorities.**

*Cases*        *Page(-s)*

Abreu v. United States,
   468 F.3d 20 (10th Cir. 2006)…………………………………………………………………………………………39

Alexander v. Perrill,
   916 F.2d 1392 (9th Cir. 1990)……………………………………………………………………………………24, 39

Anderson v. Creighton,
   483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed.2d 523 (1987)…………………..…………………………………..*passim*

Appleton v. United States,
   98 F. Supp. 2d 30 (D.D.C. 2000)……………………………………………………………………………………36

Arcoren v. Peters,
   829 F.2d 671 (8th Cir. 1987)………………………………………………………………………………………..……24

Art Metal-U.S.A., Inc. v. United States,
   753 F.2d 1151 (D.C. Cir. 1985)……………………………………………………………………………………………5

Ashcroft v. Iqbal,
   556 U.S. 662, 129 S. Ct. 1937 (2009)……………………………………….……………………..……………………2

Barbera v. Smith,
    836 F.2d 96 (2d Cir. 1987)...................................................................................................38

Bell Atlantic Corporation v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007).................................................23

Berkovitz by Berkovitz v. United States,
    486 U.S. 531, 108 S. Ct. 1954, 100 L. Ed.2d 531 (1988)................................................35

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,
    403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed.2d 619 (1971).............................................passim

Boyle v. United Technologies Corp.,
    487 U.S. 500, 108 S. Ct. 2510 (1988)............................................................................36

Bush v. Lucas,
    462 U.S. 367, 103 S. Ct. 2404, 76 L. Ed.2d 648 (1983)............................................11, 12

Butz v. Economou,
    438 U.S. 478, 98 S. Ct. 2894, 57 L. Ed. 895 (1978).......................................................38

Carlson v. Green,
    446 U.S. 14, 100 S. Ct. 1468 (1980)...........................................................................10, 12

Conservative Club of Washington v. Finkelstein,
    738 F. Supp. 6 (D.D.C. 1990).....................................................................................20-21

Correctional Services Corporation v. Malesko,
    534 U.S. 61, 122 S. Ct. 515 (2001)..................................................................................10

Dalrymple v. United States,
    460 F.3d 1318 (11th Cir. 2006)........................................................................................5

Davis v. Passman,
    442 U.S. 228 (1979)..........................................................................................................9

Elder v. United States,
    312 F.3d 1172 (10th Cir. 2002)..................................................................................35-38

Fry v. Melaragno,
    939 F.2d 832 (9th Cir. 1991)......................................................................................37-38

Gray v. Bell,
    712 F.2d 490 (D.C. Cir. 1983).........................................................................................35

Griffin v. United States,
    500 F.2d 1059, 24 A.L.R. Fed. 441 (3rd Cir. 1974).........................................................35

Halberstram v. Welch,
705 F.2d 472 (D.C. Cir. 1983)……………………………………………………………………………………..21, 23

Harbury v. Deutch,
244 F.3d 956 (D.C. Cir. 2001)………………………………………………………………………………………40

Henderson v. United States,
846 F.2d 1233 (9th Cir. 1988)……………………………………………………………………………………24

Hornbeck Offshore Transportation, LLC v. United States,
569 F.3d 506 (D.C. Cir. 2009)……………………………………………………………………………..…………5

Kim v. United States,
632 F.3d 713 (D.C. Cir. 2011)………………………………………………………………………………..……10

Krueger v. Lyng
927 F.2d 1050 (8th Cir. 1991)……………………………………………………………………………………..12

Marsoun v. United States,
591 F. Supp.2d 41 (D.D.C. 2008)………………………………………………………………………………..10

McCarthy v. Maddigan,
914 F.2d 1411 (10th Cir. 1990), *cert. granted*, 499 U.S. 974, 111 S. Ct. 1618,
113 L. Ed.2d 716 (1991) *and judgment rev'd on other grounds*, 503 U.S. 140,
112 S. Ct. 1081, 117 L. Ed.2d 291 (1992)………………………………………………………………..……9

Nevin v. United States,
696 F.2d 1229 (9th Cir. 1983)………………………………………………………………………..…………36

O'Neil v. Bergan,
452 A.2d 337 (D.C. 1982)…………………………………………………………………………………..……..20

Onderick v. Morgan,
897 F.2d 204 (6th Cir. 1989)……………………………………………………………………………………….8

Pollack v. Meese,
737 F. Supp. 663 (D.D.C. 1990)…………………………………………………………………………..…6, 7

Reaves-Bey v. Karr and Zoom Courier Service,
840 A.2d 701 (D.C. 2004)……………………………………………………………………………………..…..6

Red Lake Band of Chippewa Indians v. United States,
800 F.2d 1187 (D.C. Cir. 1986)…………………………………………………………………………………35

Savings Bank v. Ward,
100 U.S. 195, 25 L. Ed. 621 (1879)………………………………………………………………………….20

Schweiker v. Chilicky,
       487 U.S. 412, 108 S. Ct. 2460, 101 L. Ed.2d 370 (1988)...................................................12

Second Amendment Found. v. United States Conference of Mayors,
       274 F.3d 521 (D.C. Cir. 2001)..........................................................................................21

Spagnola v. Mathis,
       859 F.2d 223 (D.C. Cir. 1988)......................................................................................10-12

Stevens v. Department of the Treasury,
       500 U.S. 1 (1991).............................................................................................................24

Tappen v. Ager,
       599 F.2d 376 (10th Cir. 1979)..........................................................................................21

United States v. Gaubert,
       499 U.S. 315, 111 S. Ct. 1267, 113 L. Ed.2d 335 (1991).................................................36

United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),
       467 U.S. 797, 104 S. Ct. 2755, 81 L. Ed.2d 660 (1984)...................................................36

Wilson v. Garcia,
       471 U.S. 261 (1985).........................................................................................................13

Wilson v. Libby,
       535 F.3d 697 (D.C. Cir. 2008)......................................................................................11-12

Wood v. Standard Products Company, Inc.,
       671 F.2d 825 (4th Cir. 1982).............................................................................................3

### *Constitution*

United States Constitution, Fifth Amendment...............................................................*passim*

### *Legislation*

H. R. Conf. Rep. No. 100-1104 (1988)..............................................................................11
Internal Revenue Service Restructuring and Reform Act of 1998, P.L. 105-206....................25
Joint Committee on Taxation, *Background and Information Relating to the Taxpayer Bill of Rights
       (JCX- 15-95)*, March 21, 1995........................................................................................11
S. 2223, 100th Cong., 2d Sess. § 123 (1988).....................................................................11

### *Codes*

26 C.F.R. § 601.106...................................................................................................*passim*
26 U.S.C. § 6015.......................................................................................................*passim*
26 U.S.C. § 6201.............................................................................................................11
26 U.S.C. § 6301.............................................................................................................11

26 U.S.C. § 7433...............................................................................................................................*passim*
26 U.S.C. § App. Rule 321....................................................................................................................3
28 U.S.C. § 1331...............................................................................................................................6
28 U.S.C. § 1346..............................................................................................................................*passim*
28 U.S.C. § 1346(b)(1)...............................................................................................................2, 4, 13
28 U.S.C. § 1391(b)............................................................................................................................7
28 U.S.C. § 1402(b)............................................................................................................................4
28 U.S.C. § 2674..............................................................................................................................24
28 U.S.C. § 2675..............................................................................................................................13
28 U.S.C. § 2679................................................................................................................................2
28 U.S.C. § 2680(c)........................................................................................................................3, 4
28 U.S.C. § 7430..............................................................................................................................*passim*
D.C. Code § 12-301(8).......................................................................................................................13
D.C. Code § 13-423(a).....................................................................................................................6, 7

**Rules**

D.C. Rule 8.4...................................................................................................................................20
Fed. R. Civ. P. 4(i)(3)........................................................................................................................14
Fed. R. Civ. P. 38.............................................................................................................................13

**Official Directives, Policies, Orders, and Procedures**

Appeals Policy Statement P-8-1.........................................................................................................25
I.R.M. 8.4.1.24................................................................................................................................29
I.R.S. Delegation Order No. 60 (Rev. 7)...............................................................................................29
Rev. Proc. 89-14, 89-8 I.R.B.  20.......................................................................................................24
Rev. Proc. 87-24, 1987-1 C.B. 720....................................................................................................*passim*
Rev. Proc. 2003-19.....................................................................................................................32, 33
Treasury Directive 63-01..................................................................................................................25

**Miscellaneous Authorities**

*RESTATEMENT (SECOND) OF AGENCY (1958) § 228(1)*..................................................................21
*RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 377*...................................................................4
Robert L. Felix, *AMERICAN CONFLICTS LAW § 133 (3rd Ed. 1977)*................................................4

**Introduction.**

1.       This civil action emanates as an offshoot from a U.S. Tax Court case conducted in the District of

Columbia, in which the plaintiffs proceeded *pro sésé* against the Internal Revenue Service (IRS).  That Tax

Court case has already been decided under small ("S") case procedures, and the Tax Court's rulings and

orders are not reviewable by any other court under those provisions.  Consequently, the elements and

issues of tort and unconstitutional conduct included in this civil action have nothing to do with those tax

issues already decided by the Tax Court.   One of those issues decided by the Tax Court was a *de novo*

Court-conducted decision of an Innocent Spouse Relief request (hereinafter referred to as the "ISRR")

for plaintiff Amy E. Reiff, which was performed in response to the plaintiffs' allegations of negligence

and/or deliberate misconduct by the IRS and its employees regarding the subject matter of this civil

action.  This lawsuit revolves around the torts and constitutional violations conducted against the

plaintiffs by the individually-named defendants during the original opposing-counsel-requested ISRR

determination purportedly performed by the Appeals Office, Innocent Spouse Division, in the IRS's

Cincinnati, OH/Covington, KY Service Office (hereinafter referred to as "Appeals" in this Complaint).

2.       During the initial hearing of the Tax Court case, the Tax Court judge approved an opposing-

counsel continuance motion and generally recalendared the case based on the stated rationale that the

IRS wanted the opportunity to investigate and make a determination for plaintiff Amy E. Reiff's ISRR

through Appeals before the matter was heard by the Tax Court.   This negotiated written agreement

(see Exhibit 1), as an instrument, in its terms, and with its inherent public policy considerations, codifies

the plaintiffs' principal protected liberty interests in this civil action on both federal and state forum

levels.  Simply stated, the defendants did not legally comply with the terms and standards which they

themselves requested in that written agreement; initially, Appeals either did not notify the plaintiffs that

it had conducted, or Appeals did not actually conduct, an ISRR determination.  Additional misconduct

and corresponding tortious violations of official procedure, regulation, and law (to include the

Constitution) by the defendants transpired during and after the course of Appeals' purported

determination process of the ISRR.

3.      There are three separate actions in this case, all of which involve the individually-named

defendants' violations of official procedure, regulation, and law associated with the purported ISRR

determination by Appeals:  The plaintiffs allege abuse of discretionary authority against Sharon A. Casey

(hereinafter referred to as "Casey")  and perhaps other IRS-employed parties during the purported ISRR

determination; the plaintiffs also allege tortious and constitutional violations of official procedure,

regulation, and law during and after the course of the purported Appeals ISRR determination by both

Casey and Adam P. Sweet (hereinafter referred to as "Sweet"), and perhaps other IRS employees; and,

the plaintiffs allege an unlawful attempt by Casey and Sweet, and possibly other IRS-employed parties,

to cover-up the abuse of discretionary authority and other illicit conduct allegations made by the

plaintiffs through illegal and calculated silence (civil conspiracy).

4.      While the plaintiffs realize that brief-statement complaints are generally preferred by the

courts, the allegations (especially those of misrepresentation, abuse of process, and civil conspiracy)

contained in this particular Complaint require a great deal of specificity to withstand legal scrutiny; plus,

the proffered charges must deflect any obvious defenses and immunities which may be brought before

the Court during the pre-discovery, discovery, and trial phases of this litigation (especially the former

two categories).  Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556

U.S. 662 (2009).  Consequently, there is considerable detail, both in facts and in law, provided in several

of the allegations contained in this Complaint.

### Federal Tort Claims Act - Jurisdiction, Venue, Administrative Claim Exhaustion, and Sovereign Immunity Waiver Requirements.

5.      Under the Federal Tort Claims Act (hereinafter referred to as "FTCA"), federal district court

jurisdiction is stipulated in 28 U.S.C. §§ 1346(b)(1) and 2679.  This civil action is for money damages

against the United States (as the sole defendant under this provision) for "... for injury or loss of

property, or personal injury or death caused by the negligent or wrongful act or omission of any

employee of the Government while acting within the scope of his office or employment …." This

provision grants a waiver of limited sovereign immunity by making the United States liable to the same

extent as private individuals for certain torts while acting within the scope of their employment. <u>Wood

v. Standard Products Co., Inc.</u>, 671 F.2d 825 (4th Cir. 1982).

6.      There are no other Congressionally-mandated legal remedies available to the plaintiffs (such as

injunctive or declaratory relief, which are useless in this civil action, as the plaintiffs have already

sustained tortious injury through the defendants' conduct) for principally-negligent acts and/or

omissions besides FTCA-sanctioned monetary damages to compensate the plaintiffs for the direct

expense, current and future economic loss, loss of consortium, negligent and/or intentional infliction of

emotional distress/mental anguish, and other compensation allowed by law. (The element of emotional

distress/mental anguish is submitted for degree of damages only, as opposed to actual charges.) As

stipulated  under District of Columbia negligence law, these torts transpired via Casey's and Sweet's

conduct during the time period of the purported ISRR investigation and determination by Appeals

(October 4, 2011 through August 13, 2012) and its aftermath. Both Casey and Sweet are sued in their

respective official capacities under this provision, and the United States is appropriately substituted as

the defendant in place of both individuals in this suit under the FTCA.

7.      The requirements of exhausted administrative remedies have been satisfied. It should be noted

that the IRS's claims office justified its adverse decision by stating that matters involving tax assessment

and collection are exempt from the FTCA under 28 U.S.C. § 2680(c); however, this particular suit

involves defendants' conduct during a tax relief ***determination*** for plaintiffs' ISRR (which is neither an

assessment nor a collection activity) under the provisions of 26 U.S.C. §§ 6015(a) and App. Rule 321. (26

U.S.C. is the statutory authority which comprises the Internal Revenue Code (hereinafter referred to as

the "I.R.C.")) Consequently, the exemptions to the FTCA noted by the IRS claims office in 28 U.S.C. §

2680(c) do not apply to this civil action, and this Court has proper jurisdiction here.

8.      For the FTCA, the venue in this Complaint is governed by 28 U.S.C. §§ 1346(b) and 1402(b),

which contains civil action provisions against the United States as a defendant.  Under the pendant

venue doctrine, this tort action is prosecuted in the judicial district where the act or omission transpired,

the District of Columbia, via common nucleus of operative fact.  Additionally, tort and conflicts law each

hold that "some acts ... produce impacts across state lines. The orthodox rule, with torts as with crimes,

is that when an act operates across a state line its legal character is determined by the law of the place

where it first takes harmful effect or produces the result complained of."   Robert L. Felix, *AMERICAN*

*CONFLICTS LAW § 133 (3rd Ed. 1977)*.  The venue where the "result complained of" was produced is

clearly the District of Columbia, when and where Sweet informed the plaintiffs that the ISRR had been

denied. (See Exhibits 4 and 5 plus the additional allegations contained in this Complaint.)  The place of

injury is also referred to as the place where the last act required to complete the tort occurred.

*RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 377* (stating that the "place of wrong is the state where

the last event necessary to make an actor liable for an alleged tort takes place").  Again, that would be

the District of Columbia, at the point where Sweet sent Exhibit 4 to the plaintiffs, which notified the

plaintiffs that the ISRR had been disapproved on the basis of purported non-cooperation with Appeals.

The last act in the initial ISRR determination tort sequence against the plaintiffs was then complete.

The requirements of judicial economy, convenience, and fairness are thereby properly met under the

FTCA.

9.      Although the FTCA dictates that its limited waiver of sovereign immunity cannot solely arise

from negligence from the United States' failure to carry out a federal statutory duty, an analogous

private liability does exist if a private person under like circumstances would have a corresponding duty

and be "independently tortious" under forum state {or District of Columbia} law.   <u>Art Metal-U.S.A., Inc.</u>

v. United States, 753 F.2d 1151 (D.C. Cir. 1985), Hornbeck Offshore Transportation v. United States, 569 F.3d 506 (D.C. Cir. 2009), and Dalrymple v. United States, 460 F.3d 1318 (11th Cir. 2006).

      a.      Those elements which comprise the allegations contained in this Complaint, while several points are argued from a federal statutory contravention standpoint (in part, to accommodate that conduct which falls subject to *Bivens* claims, which is also included in this Complaint), also carry tort responsibilities by which a private person may be subject under District of Columbia case law.

      b.      To codify the analogous private liability by a simplified illustration, the plaintiffs submit the following example.   If a first party (1P) proposes and enters into a written agreement with a second party (2P) to secure and evaluate 2P's employment information on behalf of 1P's employer (PE), an employment recruiting firm which is 'headhunting' for a large company (LC),  using PE's in-house expert services from 3P to actually make that decision, the purpose of which is to provide 2P's hiring suitability information to LC; and then (a) 3P fails to acknowledge or otherwise respond to the employment information provided by 2P, (b) 3P does not communicate or otherwise provide any decision for 2P's application to 2P (which would thereby uphold 1P's side of the proverbial 'bargain' contained in the terms of the existing written agreement),  and under which (c) 2P suffered both direct monetary and time-related damages which 2P would not have incurred had 2P not become a party to 1P's initiated agreement's terms by relying and acting upon the representations contained therein; then that conduct would constitute a tort or torts under which both 1P and 3P (and, subsequently, PE) could be held liable. The analogous private liability standards set by Hornbeck and Dalrymple are thereby met with this illustration.

c.      Generally, elements of tort are comprised of duty of reasonable care, breach of duty, causation, proximate cause/reasonable foreseeability of injury, and damages; in the District of Columbia, the forum state in this civil action, those elements are depicted as "the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the

plaintiff's injury," which result in damages to the plaintiff.  Reaves-Bey v. Karr and Zoom Courier Service, 840 A.2d 701 (D.C. 2004).  Those elements of tort are all present in the provided analogous private liability example.

### *Bivens* Claims - Jurisdiction, Venue, Administrative Claim Exhaustion, and Sovereign Immunity Waiver Requirements.

10.     Under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) (hereinafter referred to as "*Bivens*"), federal district court jurisdiction is stipulated under 28 U.S.C. § 1331, which provides original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States.  Both Sweet and Casey are sued in their respective individual or personal capacities (which shall, for convenience' sake, hereinafter be noted as "individual" capacities) under this provision, and each are subsequently named individually as defendants in this civil action.

11.     Personal jurisdiction in this Court over individual defendants Casey and Sweet is proper under D.C. Code § 13-423(a)(1), the District of Columbia's 'long-arm' statute, as each of them "transact[ed]... business in the District of Columbia ...."  Sweet also falls subject to D.C. Code § 13-423(a)(3), by "causing tortious injury {to the plaintiffs} by an act or omission in the District of Columbia."  Personal jurisdiction is furthermore proper for defendant Casey under D.C. Code § 13-423(a)(4), as she caused "...tortious injury {to the plaintiffs} in the District of Columbia by an act or omission outside the District of Columbia if [s]he regularly does ... business ... " in the District of Columbia with Sweet and/or other parties. Pollack v. Meese, 737 F. Supp. 663 (D.D.C. 1990).

        a.     Hu drew up and filed the recalendar motion/negotiated agreement (Exhibit 1) with the plaintiffs to the Tax Court in the District of Columbia; Sweet originated the ISRR administrative file and its transfer to Appeals (and Casey) from the District of Columbia; Sweet retained some degree of involvement with Casey in the purported ISRR determination process and its aftermath from the District of Columbia (presumably, Sweet found out about Casey's adverse ISRR decision from her in some

fashion, as it was he – not Casey – who notified the plaintiffs that plaintiff Amy E. Reiff's ISRR had

supposedly been denied by Appeals (Exhibit 4)); and, when Appeals had purportedly made its adverse

determination for the ISRR, the administrative file was supposedly returned to Sweet in the District of

Columbia, the original purpose of which was to provide evidence (the ISRR determination) at the Tax

Court trial in the District of Columbia.  Freely translated, Casey and Sweet had an ongoing business

relationship in the District of Columbia during and after the time of the purported ISRR determination,

whereby Appeals served as an appendage of Sweet's District of Columbia office to make the ISRR

determination which, in turn, Sweet would present as evidence to the Tax Court on behalf of the IRS.

Consequently, the 'regular business' requirement of D.C. Code § 13-423(a)(4) and Pollack is satisfied for

both Casey and Sweet within the District of Columbia.

      b.      Finally, there is substantial evidence, more fully described in other portions of this

Complaint, that Casey and Sweet acted in concert to illicitly cover up their previous contraventions of

official procedure, regulation, and law through an overt and ongoing 'conspiracy of silence' (civil

conspiracy), conducted within the parameters of color of law but outside of Casey's and Sweet's

respective scopes of employment against the plaintiffs, which was generally conducted through the

District of Columbia.  This conduct also falls purview to the provisions contained within D.C. Code § 13-

423(a)(4), as Casey caused " … tortious injury {to the plaintiffs} in the District of Columbia by an act or

omission outside the District of Columbia … " while "… engag[ing] in [a] … persistent course of conduct …

" within the District of Columbia with Sweet.  Consequently, Casey is shown to have had sufficient

contacts on two different levels (business and personal) with Sweet in the District of Columbia, and

personal jurisdiction for both defendants is appropriate there.

12.      Proper venues in *Bivens* actions are defined under 28 U.S.C. § 1391(b), which provides that an

action may be filed in the district in which a substantial part of the events or omissions giving rise to the

claim transpired under the "weight of contacts" test when examining availability of potential witnesses

and evidence, plus the consideration of the convenience of the defendants, both in their individual and official capacities.  Onderick v. Morgan, 897 F.2d 204 (6th Cir. 1989).

      a.      As Sweet regularly conducted his business in the District of Columbia, he allegedly forwarded the plaintiffs' ISRR administrative file to Casey in Appeals, who then supposedly returned it to Sweet when the purported investigation and determination was complete.  The purpose of the entire purported ISRR determination was to allow the IRS to evaluate, determine, and submit additional evidence regarding that matter to the Tax Court via Sweet in the District of Columbia.  The physical evidence, the plaintiffs, Sweet, and most of the potential witnesses and other prospective defendants involved in this business matter are currently located in the District of Columbia (business) and the D.C. metropolitan area (residences).

      b.      Plaintiffs do not know the details pertaining to the specific degree in which Casey and Sweet were each involved in the ISRR determination process.  Because Sweet and Casey have not and will not voluntarily answer plaintiff's questions regarding how and to what degree they each were involved in the purported ISRR determination (plus who else may have been involved and what roles they played in the scenario), plaintiffs must reasonably assume, based on the record provided by the individual defendants, that each of them was involved in the matter to some extent, the specific degree of which will be ascertained during discovery and at trial.  With the plaintiffs' current degree of knowledge, under the "weight of contacts" test, the Federal District Court for the District of Columbia is the appropriate venue for this case.

13.     There is no Congressionally-mandated administrative remedies exhaustion requirement under Bivens, although plaintiffs did include this prospective remedy in their administrative claim to the IRS.  While it refuted the FTCA portion of plaintiffs' administrative claim, the IRS claims office simply did not address the Bivens issues contained in the administrative remedy narrative within the stipulated six-month administrative remedies statute of limitations.  Whether to require exhaustion, and what

specifically constitutes exhaustion of administrative remedy requirements, is a matter to be determined

by judicial discretion.   McCarthy v. Maddigan, 914 F.2d 1411 (10th Cir. 1990), *cert. granted*, 499 U.S.

974, 111 S. Ct. 1618, 113 L. Ed. 2d 716 (1991) *and judgment rev'd on other grounds*, 503 U.S. 140, 112 S.

Ct. 1081, 117 L. Ed. 2d 291 (1992).  Since plaintiffs did submit a *Bivens*-oriented claim as a part and with

the provisions of their other administrative claims, and given that the IRS claims office did not render a

decision for *Bivens* with the FTCA remedy it had already denied, and given that the six-month

administrative review period has already tolled without any action taken by the claims office regarding

the plaintiffs' *Bivens* claim, plaintiffs advocate that they have exhausted their administrative remedies

requirement to the best of their abilities and can now file this civil action under *Bivens* accordingly.

14.    The charges under *Bivens* are comprised of the following for each named individual defendant in

this Complaint for the torts below, all of which contributed to deprivation of plaintiffs' Fifth Amendment

constitutional rights under due process:  Gross negligence/reckless indifference and/or intentional

tortious conduct (to include emotional distress/mental anguish) which violated the plaintiffs'

constitutional rights under the Fifth Amendment's due process clause, misrepresentation (through

negligence, gross negligence/reckless indifference, or intentional conduct); abuse of process; and, civil

conspiracy for personal, non-business reasons under color of law.

15.    Congress has not statutorily prohibited relief through monetary damage recovery by the

plaintiffs.

    a.    There are no alternate remedies available to the plaintiffs as substitutes for recovery of

damages under the Constitution (Davis v. Passman, 442 U.S. 228 (1979)), nor are there "special factors

counseling hesitation" contemplated by Congress which would preclude using *Bivens* as an appropriate

remedy (Carlson v. Green, 446 U.S. 14, 100 S. Ct. 1468 (1980)), considering the facts of this case's due

process values (upon which there is further elaboration in this Complaint) which protect the integrity of

the internal revenue system and the rights of the plaintiffs alike.  The plaintiffs advocate that Congress

has not provided any remedial mechanisms for the constitutional violations for tax determinations which transpired as outlined in this civil action, and this Court should recognize and invoke a *Bivens* remedy here accordingly.  Bush v. Lucas, 462 U.S. 367, 103 S. Ct. 2404, 76 L. Ed.2d 648 (1983).

      b.      The Supreme Court determined that Congress clearly intended for the FTCA and *Bivens* to serve as parallel and complementary sources of liability, as there is no specific provision stipulated in the FTCA which precludes recovery under *Bivens*.  Correctional Services Corporation v. Malesko, 534 U.S. 61, 122 S. Ct. 515 (2001).   Congress therefore considered that victims of wrongdoing shall have an action through the FTCA against the United States for generally-negligent tortious conduct and a *Bivens* action against named defendants in their individual capacities for tortious conduct which also violates those victims' constitutional rights.  Carlson, *supra*.  Otherwise, many intentional and some negligent tortious acts and/or omissions not prosecutable under the FTCA which also contravene provisions of the Constitution under *Bivens* would escape legal scrutiny and justice.

16.      Within the District of Columbia, there are three fairly-recently decided cases, Kim v. United States, 632 F.3d 713 (D.C. Cir. 2011); Wilson v. Libby, 535 F.3d 697 (D.C. Cir. 2008); and Marsoun v. United States, 591 F. Supp.2d 41 (D.D.C. 2008), all of which have denied the plaintiffs' claims for relief under *Bivens*.

      a.      Both Marsoun and Kim cite Wilson in holding that Congress has already created a "comprehensive remedial scheme" which is, in all three cases, the Internal Revenue Code (hereinafter referred to as the "I.R.C.," which includes the TBOR and the FTCA), thereby negating the need for a *Bivens* remedy, which exists outside of the legal confines of the I.R.C.   Wilson further elaborates that "it is the comprehensiveness of the statutory scheme involved, not the adequacy of specific remedies extended thereunder that counsels judicial abstention" (citing Spagnola v. Mathis, 859 F.2d 223 (D.C. Cir. 1988).

b.      The plaintiffs advocate that, while Congress intended to remedy most negligent torts

through the FTCA, and Congress provided remedies for both negligent and intentional torts during the

tax collection process through the TBOR, there is no provision in the I.R.C. which provides relief for

constitutional violations in tax relief determinations.   In the legislative history of the TBOR, Congress

originally had both collection and "determination" of tax included in the proposed bill's language, but it

considered and later dropped the latter from the provisions of what was to become 26 U.S.C. § 7433.  S.

2223, 100th Cong., 2d Sess. § 123 (1988) and H. R. Conf. Rep. No. 100-1104 (1988).   Congress later

discarded other provisions regarding tax refunds, interest, and penalties.   Joint Committee on Taxation,

*Background and Information Relating to the Taxpayer Bill of Rights (JCX- 15-95)*, March 21, 1995.

c.      The plaintiffs contend that "determination of tax," as ensconced by Congress in the bills'

plain English language and context, is not the same as  a 'tax relief determination,' in which the

plaintiffs' ISRR is included.   For instance, 26 U.S.C. § 6201(a) stipulates that "the Secretary is authorized

and required to make the inquiries, determinations, and assessments of all taxes ... imposed by this title

...."  Whereas 26 U.S.C. § 6015 pertains to relief from joint and several tax liability (under which the

plaintiffs' ISRR determination is subject), and § 6301 *et seq.* deals with the subject of tax collections,

§ 6201 *et seq.* is dedicated to tax assessments.  Hence, the term, "determinations ... of all taxes" used in

this section (§ 6201 *et seq.*), takes on an entirely different meaning that that which is found in the term,

'tax relief determination' under § 6015.  Congress's "determination of tax" as used in the TBOR's

legislative history equates to determinations of tax for assessments only, which does not include tax

relief determinations.  The two uses of the word "determination," in translation, context, and statutory

history, are not the same.  Consequently, there was and is no comprehensive statutory scheme which

includes relief for constitutional violations which may transpire during tax relief determinations.

d.      If a *Bivens* cure is truly unavailable to the plaintiffs, then Sweet and Casey could simply

concede that the entire bank of their tortious and their Constitution-violating actions and omissions was

all intentional; thereby rendering the FTCA as inoperative for the plaintiffs' relief, as negligent conduct would not be a factor in this civil action; and since the plaintiffs' claim here is based on a tax determination, as opposed to a collection, the TBOR offers no cure; and therefore, it would deny the plaintiffs any remedy whatsoever (as opposed to the simply inadequate remedies or incomplete relief concepts found and cited in Bush, Spagnola, and Wilson, among other cases) and would permit the defendants to escape legal scrutiny and justice for their unconstitutional conduct. Congress would not have intended such an unjust result, and Wilson's described proverbial disease found in the defendants' illicit conduct in this civil action is indeed far worse than the prospective *Bivens* cure. The I.R.C.'s comprehensive statutory scheme considered in Wilson was and is simply non-existent for tax determinations in light of the public policy considerations contained in the negotiated agreement (Exhibit 1) between the IRS and the plaintiffs. Because Congress would not have built an incomplete remedial statutory mechanism or scheme by design, it must be concluded that the current hole within the statutory scheme exists through some form of Congressional inadvertence.

e.      Provided that "Congress has put in place *a comprehensive system to administer public rights*, has *'not inadvertently' omitted damages remedies for certain claimants*, and has not plainly expressed an intention that the courts preserve *Bivens* remedies," then the courts cannot create additional remedies under *Bivens*. (Italics added.) Wilson, quoting Spagnola which, in turn, interpreted the Supreme Court's rationale and findings in Bush and Schweiker v. Chilicky, 487 U.S. 412, 108 S. Ct. 2460, 101 L. Ed. 2d 370 (1988). The reverse is true for all three Wilson elements as applies to this case. The Congressionally-provided "adequate remedial mechanisms for constitutional violations" discussed in Chilicky and other like cases are, quite simply, not present in this case for tax relief determinations, and the courts can and should provide appropriate remedies under Carlson to the plaintiffs through *Bivens* accordingly. Krueger v. Lyng, 927 F.2d 1050 (8th Cir. 1991). The degree of harm that a judicial intrusion into a congressionally-regulated field is much less than that injury which will transpire to the

plaintiffs if the defendants in this civil action are left to their own devices via neglect, intent, and gross abuses of federal power to avoid responsibility for their own illicit conduct and Fifth Amendment due process constitutional contraventions as described in the facts contained in this Complaint.

### *Bivens* Claims – Plaintiffs' Demand for Jury Trial.

17.    Plaintiffs demand a jury trial for those charges brought against defendants Casey and Sweet, plus any other defendants who may be later named as having committed constitutional rights violations against the plaintiffs; in their respective individual capacities under *Bivens*.  Fed. R. Civ. P. 38.

### Statutes of Limitations for Filings Under the FTCA and *Bivens*.

18.    According to 28 U.S.C. § 2675, the FTCA has a two-year statute of limitations by which to file an administrative claim, which the plaintiffs have met; it also presents a second limitations statute of six months after the IRS has denied plaintiffs' administrative claim for them to file this civil action and properly serve the United States, and that provision has also been met.  *Bivens* claims are subject to the personal injury statute of limitations provisions of D.C. Code § 12-301(8) under <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985), which establishes the District of Columbia as the forum state for this civil action.   D.C. Code § 12-301(8) dictates that personal injury lawsuits must be filed (to include serving individual defendants) within three years from the date this claim accrued, on or after August 13, 2012.  (See Exhibit 4.)  The plaintiffs have met this requirement.

### Parties in This Civil Action.

19.    Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reside at 3317 Southgate Drive, #105; Alexandria, VA  22306-3317.

20.    Defendant United States of America is a proper defendant pursuant to 28 U.S.C. § 1346(b)(1).

21.    At times relevant to this Complaint, defendant Casey was Appeals' Innocent Spouse Division's designated "contact person" for the ISRR determination.  Casey was acting under color of federal law and within her scope of employment at the IRS, with the exception of the period when and only for the

instance where she and Sweet engaged in a civil conspiracy and related acts and/or omissions against the plaintiffs, during which time she acted solely for personal, non-business reasons.  Casey is hereby sued in her official capacity (in which the United States is substituted as the named defendant) and, pursuant to Fed. R. Civ. P. 4(i)(3), in her individual capacity for acts and/or omissions occurring in connection with her duties purportedly performed under color of federal law which violated plaintiffs' Fifth Amendment constitutional rights under due process.

22.     At times relevant to this Complaint, defendant Sweet was an Attorney in the IRS Chief Counsel's Office, Small Business/Self-Employed Division.  His employment in this capacity was located in the District of Columbia.  He was responsible to interpret, administer, and enforce Internal Revenue laws, regulations, and official procedures.  He was acting under color of federal law and within his scope of employment at the IRS, with the exception of the period when and only for the instance where he and Casey engaged in a civil conspiracy and related acts and/or omissions against the plaintiffs, during which time he acted solely for personal, non-business reasons.   Sweet is hereby sued in his official capacity (in which the United States is substituted as the named defendant) and, pursuant to Fed. R. Civ. P. 4(i)(3), in his individual capacity for acts and/or omissions occurring in connection with his duties purportedly performed under color of federal law which violated plaintiffs' Fifth Amendment constitutional rights under due process.

23.     Plaintiffs anticipate that additional IRS defendants, currently unknown or otherwise unidentified to them (hereinafter referred to as "the Unknown/Unidentified Internal Revenue Service Employees," or words to that effect), were involved in this matter and, like Casey and Sweet and most likely in conjunction with one or both of them, committed torts and constitutional violations against plaintiffs. These individuals will be named and charged in an Amended Complaint or other appropriate legal vehicle during or after discovery is conducted.  At present, they are not incorporated unnecessarily into the narrative of this civil action to avoid undue and irresponsible speculation by the plaintiffs as to their

identities, roles, and specific acts and/or omissions which may constitute tortious conduct and/or which may have violated existing official procedure, regulation, and law (to include the Constitution). Casey's and Sweet's overt and ongoing 'conspiracy of silence' (civil conspiracy) has precluded the plaintiffs from ascertaining the identities of these IRS employees and what roles they actually played in this scenario, and plaintiffs will operate within the established parameters of the record provided by them (Casey and Sweet) to the best of their (plaintiffs') ability.

**Alleged Facts – Innocent Spouse Relief Request Determination.**

24.     On September 14, 2011, plaintiff Amy E. Reiff submitted to the United States Tax Court a Motion to Approve an Innocent Spouse Relief Request (the ISRR). Copies were properly served on Sweet, who assisted Hu, Sweet's immediate supervisor/manager and the attorney of record for the respondent (formerly the IRS, but now a defendant in this civil action under the FTCA, the United States) in the Tax Court case at that time.

25.     On October 4, 2011, Hu requested, and the Tax Court granted, a recalendar motion-negotiated agreement (Exhibit 1) for the Tax Court trial so that Appeals could purportedly investigate and make a tax relief determination for the ISRR "according to defendant's internal procedures." (On or about October 23, 2011, Hu left the IRS for employment in a Washington, D.C. law firm and, to the best of the plaintiffs' knowledge, Sweet became the attorney of record for the respondents (now the defendants in this civil action) against the petitioners (now the plaintiffs in this civil action) in the former Tax Court case.) The plaintiffs did not oppose the motion and signed it accordingly.

26.     During the October-November, 2011 timeframe, Sweet purportedly sent the plaintiffs' ISRR administrative file to Appeals to investigate and to otherwise conduct the purported ISRR determination process.

27.     In her role in which she identified herself as Appeals' "contact person" for the Innocent Spouse Division, Casey sent plaintiff Amy E. Reiff a form-letter request dated November 1, 2011 (Exhibit 2), to

complete and submit Form 8857 (Request for Innocent Spouse Relief) to her.  She also sent plaintiff

George Russell Reiff, Jr. a request to complete Form 12508 as part of the ISRR determination process.

No particular information sought from the plaintiffs was specified by Casey.

28.      On December 1, 2011, the plaintiffs jointly responded in writing to Casey (attached as Exhibit 3).

Plaintiffs declined to complete Forms 8857 and 12508, providing corresponding rationale for doing so,

to include the justification that the existing administrative record already contained sufficient material

by which Appeals could make an informed determination for the ISRR.  The plaintiffs also included in this

letter a series of associated questions and concerns regarding the ISRR and its surrounding

circumstances for Casey to answer.

29.      The plaintiffs did not receive a response to their December 1, 2011 letter from Casey in any

form; the plaintiffs never heard from Casey or anyone else in Appeals again.   The plaintiffs never

received a written or any other form of determination notification from Appeals regarding the ISRR.

30.      On July 25, 2012, Sweet wrote a letter to the plaintiffs (Exhibit 4) which stated, among other

items, that "… Mrs. Reiff was not responsive to the Appeals division when they asked her for

information.  Accordingly, her request for relief was denied."  Sweet provided no other information.

31.      Sweet's July 25, 2012 letter (Exhibit 4) also included a paragraph which stated that if plaintiff

Amy E. Reiff wanted "… to pursue her claim for relief, she needs to show that the Appeals office abused

their discretion when denying the {ISRR} claim."  Sweet stipulated that this abuse of authority

information was to be submitted by the plaintiffs to and discussed with him at a proposed face-to-face

meeting that he had already tentatively scheduled.

32.      The plaintiffs sent a letter to both Casey and to Sweet by fax and by mail on August 13, 2012

(Exhibit 5).  In that document, the plaintiffs stated that they believed that Appeals' non-response to

plaintiffs' previous December 1, 2011 correspondence (Exhibit 3) constituted an abuse of discretionary

authority, and the alleged fact that Casey or some other appropriate Appeals' representative had not

notified the plaintiffs that Appeals had made an ISSR determination, and what that determination

actually was, also constituted an abuse of discretionary authority.  The plaintiffs posed corresponding

questions and concerns centering on those allegations for Casey and/or Sweet to answer.

  a.  The plaintiffs alleged that their letter of December 1, 2011 was, in fact, responsive to

Casey's request for information.   The plaintiffs asked a series of questions in their August 13, 2012 letter

(Exhibit 5) to Casey and to Sweet in an attempt to ascertain exactly what transpired in Appeals during

the purported ISRR determination and to verify Sweet's July 25, 2012 (Exhibit 4) statement about it.  The

plaintiffs stated in that letter to Casey that they needed this information from Appeals to properly

prepare for a discussion of the matter with Sweet, who purportedly had the ISRR administrative file back

in his hands (from Appeals) to prepare for trial.

  b.  The plaintiffs also stated that they did not agree with Sweet's due process analysis and

review procedures outlined in his July 25, 2012 letter (Exhibit 4) regarding potential abuse of

discretionary authority during Appeals' purported determination of the ISRR.

  c.  Neither Casey, nor anyone from Appeals, nor Sweet responded to that query.

**Summary of Specific Allegations.**

33.  The allegations listed in this section include charges for negligence under the FTCA, and they

also describe conduct subject to *Bivens* for defendants' actions and omissions which violated the

plaintiffs' constitutional rights.  There are some allegations listed here which fall purview to both the

FTCA and *Bivens* for one or both defendants.  There are also charges listed which may be subject to only

one provision or the other but, given that Casey and Sweet have each refused to answer the plaintiffs'

queries regarding the circumstances surrounding the purported ISRR determination, the allegations are

listed under both the FTCA and *Bivens*.  There is absolutely no doubt that torts have been committed by

the defendants against the plaintiffs, but whether they fall subject to the FTCA, *Bivens*, or both requires

additional information which the defendants have refused to provide the plaintiffs.  The plaintiffs will be

~ 17 ~

more exact with their allegations and the corresponding charging statutes than they have been in this Complaint once discovery is conducted.

34.     Neither Casey nor Sweet explained to the plaintiffs why Appeals did not respond in writing to the plaintiffs' letter dated December 1, 2011 (Exhibit 3), which was issued in response to Casey's request for information regarding the ISRR (Exhibit 2), when Casey and Sweet each had a duty to the plaintiffs to respond, or to ensure a response was provided, to that letter under the provisions of the negotiated agreement (Exhibit 1) which then-opposing counsel Hu filed with the Tax Court.  This omission to act constitutes negligence in the official capacities of Casey and Sweet under the FTCA.   It also indicates gross negligence/reckless disregard and/or intentional tortious conduct and misrepresentation through omission which violated the plaintiffs' Fifth Amendment constitutional due process rights in general and by Casey's and Sweet's misrepresentation through omission under *Bivens*.

35.     Neither Casey nor Sweet explained why Appeals did not respond in writing to plaintiffs' letter dated August 13, 2012 (Exhibit 5), which alleged probable abuse of discretionary authority and other associated concerns and questions regarding the purported ISRR determination.  As Appeals' representative, Casey clearly had a duty to the plaintiffs to respond to that letter; as opposing counsel in the Tax Court case, Sweet also had a duty through the negotiated written agreement drawn up by his office (Exhibit 1) to ensure that a prompt response was provided to plaintiffs from Casey alone or jointly with Casey, since the ISSR administrative file had purportedly been transferred from Appeals to his office to prepare for trial sometime between December, 2011 and July 25, 2012 (when Sweet sent Exhibit 4 to the plaintiffs, informing them that Appeals had purportedly denied the ISRR).  This omission to act, even up to this very date, constitutes negligence under the FTCA.  It also is a Fifth Amendment constitutional due process violation by gross negligence/reckless disregard and/or intentional conduct, and misrepresentation through omission, against plaintiffs by both Casey and Sweet in their individual capacities under *Bivens*.

~ 18 ~

36.     No ISRR decision was communicated from Appeals to the plaintiffs.  Neither Casey nor Sweet

offered an explanation about why Appeals did not forward in writing to the plaintiffs any decision it may

have made, the rationale and circumstances upon which that decision was based, and the date of

Appeals' purported decision for the ISRR.   (Sweet did state much later that the ISRR was denied by

Appeals because of the plaintiffs' non-cooperation (Exhibit 4) with the ISRR determination process, but

that utterance and its rationale are not supported by any evidence whatsoever, as has been shown in

Exhibit 3 and which will be discussed in further detail later in this Complaint.)  This omission to act

constitutes negligence under the FTCA in the official capacities of both Casey and Sweet.   It also

constitutes a Fifth Amendment constitutional due process violation by gross negligence/reckless

disregard and/or intentional conduct, and misrepresentation through omission by Casey and Sweet in

their individual capacities, all of which fall subject to *Bivens*.

37.     Sweet provided no information about why he waited until July 25, 2012 (Exhibit 4) to notify the

plaintiffs that Appeals had purportedly made its decision on the ISRR and that, as opposing counsel, he

had the case back in his hands to prepare for trial, when Appeals supposedly made its adverse

determination for the ISRR, according to Sweet, sometime in December, 2011.  This omission to act

constitutes negligence under the FTCA for Sweet.  It is also a Fifth Amendment constitutional due

process violation by gross negligence/reckless disregard and/or intentional conduct, misrepresentation,

professional (legal)malpractice, and abuse of process against the plaintiffs by Sweet in his individual

capacity, all of which fall subject to *Bivens*.

38.     When directly queried by plaintiffs (Exhibit 5), neither Casey nor Sweet admitted or denied that

Appeals and/or opposing counsel abused its/their discretionary authority during Appeals' purported

review of the ISRR, nor did either defendant specifically identify the parties who abused their

discretionary authority in this case.  This omission to act constitutes Fifth Amendment constitutional due

process violations by gross negligence/reckless disregard and/or intentional conduct, misrepresentation,

and abuse of process through omission by both Casey and Sweet in their individual capacities, all of which fall subject to *Bivens*.

39.     Although each had at least one opportunity to do so (including Exhibit 5), neither Casey nor Sweet admitted or denied that any constitutional provisions, laws, regulations and/or official procedures were broken by each of them or by anyone else during and after Appeals' purported review of the ISRR. Neither Casey nor Sweet indicated specifically who may have broken these laws/regulations, what the associated circumstances were, and for what reasons they were broken.  This omission to act constitutes Fifth Amendment constitutional due process violations by gross negligence/reckless disregard and/or intentional conduct, misrepresentation, and abuse of process through omission in Casey's and Sweet's individual capacities, all of which fall subject to *Bivens*.

40.     Sweet's attempt to conduct an illicit due process review for abuse of discretionary authority during Appeals' purported determination of plaintiff Amy E. Reiff's ISSR between himself and the plaintiffs (see Exhibit 4) was in direct contravention of the procedural due process clause of the Fifth Amendment.  It also represents gross negligence/reckless disregard and/or intentional conduct, plus the torts of misrepresentation, abuse of process, and professional (legal) malpractice under standards reasonably expected of a professional attorney in Sweet's individual capacity.   O'Neil v. Bergan, 452 A.2d 337 (D.C. 1982) and D.C. Rule 8.4.  Although violations of the Professional Code of Conduct are not torts in and of themselves, the negotiated agreement between Hu and plaintiffs (Exhibit 1) and its inherent public policy interests confer a legal duty upon the individual defendants to meet the terms – their 'side of the bargain' to ensure the proper conduct of the ISRR determination – of that negotiated agreement, and Sweet clearly violated that duty as a legal professional under either a negligence or intentional conduct theory; additionally, the elements of collusion (with Casey and perhaps other IRS employees) and misrepresentation form a separate and recognized case for legal malpractice, the components of which are evidenced in this case.  Savings Bank v. Ward, 100 U.S. 195, 25 L. Ed. 621

~ 20 ~

(1879), <u>Conservative Club of Washington v. Finkelstein</u>, 738 F. Supp. 6 (D.D.C. 1990) and <u>Tappen v. Ager</u>,

599 F.2d 376 (10th Cir. 1979). The plaintiffs contend that Sweet's conduct was so obviously illegal that it

will be unnecessary to incorporate the use of a professional witness to prove that point at trial. Since

these charges also violate the constitutional right to the Fifth Amendment's due process clause, all of

them fall purview to *Bivens*. It is interesting that, when the plaintiffs noted in writing that they

disagreed with Sweet's proposed internal due process review for any Appeals' abuse of process

allegations (see Exhibit 4), Sweet communicated absolutely nothing in the form of reply. No

acknowledgement, no explanation, no denials, no justification, no nothing. It is extremely indicative

that Sweet knew his conduct was both tortiously and constitutionally illegal.

41.     In the District of Columbia, a civil conspiracy consists of four elements: (a) An agreement

between two or more persons; (b) to participate in an unlawful act, or a lawful act in an unlawful

manner; (c) an injury caused by an unlawful overt act performed by one of the parties to the agreement;

(d) which overt act was done pursuant to and in furtherance of the common scheme. <u>Second</u>

<u>Amendment Found. v. United States Conference of Mayors</u>, 274 F.3d 521 (D.C. Cir. 2001) (quoting

<u>Halberstam v. Welch</u>, 705 F.2d 472 (D.C. Cir. 1983)).

        a.      Sweet entered into an ongoing civil conspiracy with Casey on some date between

December, 2011 (the approximate date when Casey purportedly disapproved the ISRR, according to

Sweet) and August 13, 2012 (the date when plaintiffs submitted Exhibit 5 to both Casey and Sweet) to

use an illicit and overt 'conspiracy of silence' tactic; whereby Sweet and Casey deliberately, through

their verbiage and/or conduct under purported color of law, yet motivated by and used solely as a

personal, non-business-motivated tool outside of their respective scopes of employment (contrary to

the *RESTATEMENT (SECOND) OF AGENCY (1958) § 228(1)* definition of 'scope of employment,' the

standard incorporated by the District of Columbia as the forum state in this civil action); developed and

used their 'conspiracy of silence' against plaintiffs' later queries (see Exhibit 5, for instance, the

questions and allegations of which were never addressed or even acknowledged by either Casey or Sweet) to ascertain what actually transpired in Appeals and the opposing counsel's office regarding the purported ISRR determination.

b.      Casey and Sweet (1) intended and overtly acted to damage the plaintiffs by denying them a prompt and proper ISRR determination through Appeals, per the Tax Court-approved negotiated agreement and later, (2) attempted and overtly acted to deny the plaintiffs (through the 'conspiracy of silence') any opportunity for a due process hearing to rectify the ISRR situation, and (3) consistently and deliberately acted to avoid and obstruct any meaningful discussion of plaintiffs' original allegations, which constituted an overt  trick, device, and/or scheme by which to avoid responsibility to any pertinent authority for the torts and constitutional violations which Casey, Sweet, and perhaps other Unknown/Unidentified IRS employees had previously committed against the plaintiffs.

c.      None of these actions were undertaken in the furtherance of the IRS's interests at this point; rather, they were performed by Casey and Sweet solely to benefit themselves as individuals.  The personal benefit to each of them was to save themselves from the inherent adverse professional consequences of their individual tortious and unconstitutional conduct by not having to answer; through obstruction, trick, device, and/or scheme, all of which contributed to the overall 'conspiracy of silence' tactic; the plaintiffs' charges of Casey's, Sweet's, and other IRS employees' potential illicit conduct to any neutral authority.  In contrast, though, Casey and Sweet were each bound by duty (through the negotiated agreement of October 4, 2011 (Exhibit 1)) to the plaintiffs to render a determination for the ISRR (Casey) or to ensure that an ISRR determination transpired through Appeals (Sweet).  This duty to the plaintiffs was clearly breached, and then Casey and Sweet conspired and acted to cover up their past illicit conduct by their equally illicit overt silence, when each had a duty to respond to the plaintiffs' written queries (Exhibits 3 and 5) about abuse of discretionary authority and contraventions of law, regulation, and official procedure during the purported ISRR determination process.

d.      This conduct is an outrageous and intentional abuse of government power by Casey and

Sweet acting in concert in their individual capacities.  It constitutes a separate cause of action unrelated

to the subject matter of the aforementioned torts and contraventions of official procedure, regulation,

and law (to include the Constitution) against both Casey and Sweet under the FTCA and *Bivens*.  This civil

conspiracy amounts to multiple violations of plaintiffs' constitutional Fifth Amendment rights under due

process (both procedural and substantive) by both Casey and Sweet, and it is subject to *Bivens*.

e.      It is possible that Sweet, Casey, and/or other Unknown/Unidentified Internal Revenue

Service Employees may have been involved in aiding and abetting roles in this scenario.  Halberstam,

*supra*.  The plaintiffs' vantage-point on this issue is limited by the illicit silence incorporated by both

Casey and Sweet, but the specific people and their respective roles will be illuminated during discovery.

42.      The requirements to ascertain a civil conspiracy have been satisfied by the aforementioned

allegations, and a conspiratorial relationship may be sufficiently inferred from them to conduct

discovery accordingly.  Bell Atlantic Corporation v. Twombly, *supra*.  That said, **the plaintiffs ask the**

**Court to grant them at least jurisdictional or other reasonable discovery for this particular issue**, if not

complete discovery based on the provided facts and on the merits contained in this Complaint.

43.      During Casey's and Sweet's course of illicit conduct through act and/or omission, each

defendant inflicted extreme emotional distress, personal humiliation, and mental anguish on plaintiffs

under the provisions of gross negligence/reckless disregard or through intent.  These elements

represent direct contraventions of federal tort law by which defendants may be charged under *Bivens*,

as this conduct also violated the plaintiffs' Fifth Amendment due process rights.

### Governing Official Procedures, Regulations, and Law.

44.      The governing basis for both an FTCA and a *Bivens* action is that a federal official performs some

illegal or otherwise inappropriate conduct (through act or omission) which creates a tort (FTCA, where

state forum law dictates substantive liability) and/or violates a clearly established constitutional right of

the plaintiff(-s)(*Bivens* claim, which incorporates federal standards).  In order to ascertain the elements

of this 'illegal or otherwise inappropriate' conduct, the plaintiffs in this civil action turn to established

federal law, regulation, and official procedures.  A violation of a law or regulation, in and of itself, does

not give rise to a *Bivens* action unless that law or regulation supplies the basis for the claimed

constitutional right.  Arcoren v. Peters, 829 F.2d 671 (8th Cir. 1987).  The terms of the law or regulation

must expressly create the constitutional right sought to be enforced.   Alexander v. Perrill, 916 F.2d 1392

(9th Cir. 1990), specifically states that the C.F.R. and other agency policies defining defendants' duty to

plaintiffs "can establish contours of clearly established law without resort to prior case law for exact

factual circumstance" in *Bivens* actions.   The FTCA favors substantive forum state law to determine if

the plaintiff has a valid cause of action, and while federal law does not in and of itself confer a cause of

action under Stevens v. Department of the Treasury, 500 U.S. 1 (1991), it may be indicative of plaintiffs'

rights under the forum state law and of the government's potential liability ". . . in the same manner and

to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674 and Henderson v.

United States, 846 F.2d 1233 (9th Cir. 1988).  The plaintiffs have already discussed and met this standard

as part of this Complaint's constitutional and forum state tort charges.

45.       Rev. Proc. 89-14, 89-8 I.R.B.  20, Sec. 3.02, explains that "… a revenue procedure is an official

statement of a procedure published in the {Internal Revenue} Bulletin that … affects the rights and

duties of taxpayers or other members of the public under the Internal Revenue Code and related

statutes, treaties, and regulations …."  This statement is further amplified in Section 4.01, which

stipulates that "… the Bulletin is the authoritative instrument of the Commissioner of the Internal

Revenue for the publication of official rulings and procedures of the Service …. "

46.       Consequently, Revenue Procedures (Rev. Proc.), while subservient to provisions contained in the

I.R.C. and corresponding Code of Federal Regulations (C.F.R.), represent the official Service procedures

and other provisions which are used to define the duties and protect the rights of taxpayers.  Revenue

Procedures may therefore be cited as proper legal authority to define those rights and responsibilities. Therefore, the proper jurisdiction for Appeals in Tax Court-docketed cases referred to that government entity (Appeals) by opposing counsel, as was the case in the Tax Court trial between the IRS and the plaintiffs, under which Appeals' purported investigation and determination for the ISRR is subject, is principally defined by 26 U.S.C. § 6015, 26 C.F.R. § 601.106, particularly sections (a) and (d)(3); and Rev. Proc. 87-24, 1987-1 C.B. 720, respectively.

47.     Appeals Policy Statement P-8-1, which was written pursuant to the Internal Revenue Service Restructuring and Reform Act of 1998, P.L. 105-206, and Treasury Directive 63-01, states that Rev. Proc. 87-24, 1987-1 C.B. 720, describes the specific procedures to be incorporated when cases docketed by the U.S. Tax Court are referred by opposing counsel to Appeals for consideration of settlement; Rev. Proc. 87-24, Sec. 2 - Procedures, echoes this scope of authority.   Consequently, Appeals' purported determination for the ISRR was and is subject to these standards and provisions.

48.     For docketed cases before the Tax Court, opposing counsel may refer entire cases or component issues to Appeals.  Rev. Proc. 87-24, Sec. 2.01.  Appeals has sole settlement authority over a given docketed case referred to Appeals (by opposing counsel) until that case is returned to opposing counsel. Upon request, the case will be returned to opposing counsel to allow adequate trial preparation time. Id., Sec. 2.04.

49.     By agreement between opposing counsel and Appeals, any docketed case may be transferred from opposing counsel to Appeals or from Appeals to opposing counsel, as appropriate, notwithstanding the fact that the case was previously considered by the receiving function.  This authority will be utilized when such transfer will promote more efficient disposition of the case.  Id., Sec. 2.05.  Although Sweet placed the responsibility of decision for denial of the ISRR squarely at the feet of Casey in his July 25, 2011 letter (see Exhibit 4), Casey's and Sweet's illicit silence/civil conspiracy towards plaintiffs' follow-up queries does not definitively ascertain if Casey, Sweet, both Casey and Sweet, or some other party or

parties were involved in the supposed decision-making process (presuming that the purported ISRR

determination actually did transpire, which has not been demonstrated or even claimed as fact by

anyone from Appeals).

50.      Rev. Proc. 87-24, Sec. 2.09 stipulates that the plaintiffs and/or representatives will be contacted

promptly by opposing counsel or Appeals, whichever applies, as the office receiving the case. This

notification will state that the receiving office has acquired sole authority to dispose of the case, through

settlement or trial, as appropriate.  Prompt notification will also be sent in the event it is determined

that trial preparation will be commenced or that a case, or an issue or issues in a case, should not be

considered by Appeals.

       a.      The plaintiffs believe that because they received an initial Appeals contact letter (Exhibit

2) from Casey as Appeals' representative, Sweet had passed some or all of the ISRR administrative

record to her sometime in November, 2011, in order to begin the Appeals ISRR determination process.

       b.      However, when Casey supposedly returned the administrative record to Sweet after

purportedly denying plaintiffs' ISSR in December, 2011, Sweet did not notify plaintiffs that he had the

case back in his hands from Casey until July 27, 2012.  Neither Sweet nor Casey provided the specific

date or any details regarding Appeals' purported decision.  The plaintiffs contend that Sweet was legally

obligated to notify them that he had the case and was preparing it for trial shortly after Appeals/Casey

made its/her purported determination decision in December, 2011, as opposed to the July 27, 2012 date

when Sweet finally did notify plaintiffs that he had the case back in his hands.  In his role as an IRS

attorney, Sweet committed the tort of misrepresentation through gross negligence/reckless disregard

for plaintiffs' rights, at best; however, there is a great probability that Sweet committed this tort

intentionally.

       c.      Sweet's own illicit silence as part of a civil conspiracy with Casey, and possibly with

other unknown and/or unidentified IRS employees, on this issue precludes the plaintiffs from

discovering what actually transpired in this matter in totality and with certainty.  Consequently, the plaintiffs present their case on this issue to the best of their abilities and knowledge based on the record provided.

51.      This argument extends to the plaintiffs' Fifth Amendment rights of procedural due process, as between the December, 2011 date of Appeals' purported decision and July 27, 2012, when Sweet finally notified the plaintiffs that Appeals had denied their ISRR claim, the plaintiffs were under the impression last communicated by Casey that they were dealing with Appeals in the investigation and determination of the ISRR, when in fact they should have already been dealing with Sweet (as opposing counsel) who, unbeknownst to the plaintiffs, already had the case back in his hands to prepare for trial.  The plaintiffs were unaware of and had no reason to be aware of this situation until Sweet informed them on July 27, 2012 that Appeals had purportedly denied the ISRR.  Under Rev. Proc. 87-24, Sec. 2.09, Sweet had complete responsibility to timely notify the plaintiffs that he had the case back in his hands to prepare for trial in his role as opposing counsel.  Because he failed to perform that official procedural obligation, Sweet had an unlawful and unfair advantage regarding the case without sharing that knowledge with the plaintiffs until a much later date of his own choosing, the timing of which was suspiciously close to the scheduled trial date in the first week of October, 2012; he effectively had several months' time to prepare the case for trial while constructively denying the plaintiffs that same advantage, as they rightfully believed that they were still dealing with Casey for the ISRR determination (who also did not inform them otherwise, in a like manner as Sweet, which indicates illegal complicity between the two).

52.      Additionally, neither Sweet nor Casey responded to plaintiffs' letter dated August 12, 2012 (see Exhibit 5), in which the plaintiffs alleged that Casey and/or Appeals had abused her/its discretionary authority; Sweet was duly informed of this allegation by the same letter, as he purportedly had the ISRR administrative record back from Casey to prepare for trial, and there was every likelihood that he himself was already involved in this illicit scenario.  Neither Casey, nor Sweet, nor anyone else from the

IRS provided a response to that letter. The plaintiffs were thus deprived of any opportunity to provide a meaningful response, under proper notice, to an impartial authority regarding the constitutional inadequacy (containing defects so serious that the non-existent due process procedures in this case were fundamentally unfair by definition) of Appeals' purported review of the ISRR, in contravention of the Fifth Amendment's right to procedural due process.

53.     Casey did not provide Appeals' determination decision (presuming that Sweet's naked assertion that Appeals actually made one is accurate) for the ISRR to the plaintiffs, where she (Casey) was clearly duty-bound to do so as Appeals' "contact person" under the provisions of the recalendar motion and consequent negotiated agreement between Hu (as opposing counsel for the IRS at that time) and plaintiffs dated October 4, 2011, duly approved by the Tax Court (Exhibit 1). Additionally, Sweet, as the defendant IRS's attorney of record after the date of on or about October 23, 2011, had a duty to the plaintiffs to ensure that the investigation and consequent determination decision for the ISRR was rendered according to the terms of this negotiated agreement (approved by the Tax Court). Even when the plaintiffs informed both Casey and Sweet that they believed that Appeals had abused its discretionary authority (Exhibit 5), neither Casey nor Sweet provided the plaintiffs with anything which indicated that either Appeals or the Counsel's Office intended to meet the negotiated agreement's terms or which provided a rationale as to why they (Casey and Sweet) could not meet those terms.

        a.      No determination decision communicated by Casey (in her role as Appeals' "contact person") to the plaintiffs equates to those negotiated agreement agreement's terms being unmet, regardless of what that decision (for the ISRR) might have actually been. Consequently, both Sweet and Casey failed in their respective duties to the plaintiffs.

        b.      More important, no determination decision communicated by Casey on behalf of Appeals to the plaintiffs results in … no determination decision in actuality. For it to exist, a decision needs to be communicated to both protagonists and antagonists, and this was simply not done here. As

opposing counsel, Sweet could not properly make or even legitimately communicate an ISRR

determination decision for or on behalf of Appeals which would legally stand, and Appeals did not make

the decision itself, as it communicated nothing to the plaintiffs.  That omission also fails to meet the

terms of the negotiated agreement (Exhibit 1) between Hu and the plaintiffs.  At best, this equates to

negligence by both Casey and Sweet, although it is almost certain that misrepresentation under gross

negligence/reckless disregard or intentional action and abuse of process to the degree of a

contravention of plaintiffs' Fifth Amendment due process constitutional rights apply in both cases.

54.     The fact that Casey did not inform plaintiffs that the ISRR was disapproved in December, 2011

clearly violates the provisions of 26 C.F.R. § 601.106(d)(3)(iii)(b) whereby, "At the end of the 4-month

{settlement jurisdiction} period, *or before that time if Appeals determines the case is not susceptible of*

*settlement*, the case will be returned to {opposing} Counsel.  (Italics added.)  Thereafter, {opposing}

Counsel will have exclusive authority to dispose of the case."  (This provision is echoed in I.R.S.

Delegation Order No. 60 (Rev. 7), Sec. 2.)

        a.      If the ISRR determination process was not susceptible to settlement, then that fact

should have been clearly communicated to the plaintiffs by Casey in accordance with the procedures

outlined in I.R.M. 8.4.1.24, Secs. 1 and 2C, just as Sweet was legally obligated to notify the plaintiffs that

ISRR case jurisdiction had been released to him under Rev. Proc. 87-24, Sec. 2.09.  Both the cited I.R.M.

and Rev. Proc. are subsidiary extensions of this particular C.F.R. citation.  As has already been alleged in

this Complaint, Casey did nothing when she had a duty already established by proper legal authority.

        b.      Although the cited I.R.M. is not definitive legal precedent in and of itself, it is entirely

enforceable through the negotiated agreement's terms (see Exhibit 1), "according to respondents'

internal procedures" (of which the I.R.M. is a principal source); and, given that Sweet was legally bound

by the provisions of Rev. Proc. 87-24, Sec. 2.09, plus the fact that neither Casey nor Sweet did what they

were legally supposed to do regarding proper notification to the plaintiffs of transfer of the ISRR's

jurisdiction from Appeals to opposing counsel, it strongly indicates complicity at this juncture by both individuals in a civil conspiracy against the plaintiffs, and it certainly does not fulfill the legal obligations imposed on each of them by 26 C.F.R. § 601.106(d)(3)(iii)(b). A transfer of jurisdiction is not a complete transfer of jurisdiction until all parties, to include the plaintiffs, are duly and promptly notified that the ISRR administrative file was returned from Casey to Sweet to prepare for trial. Quite simply, the 'prompt' part of the equation did not happen in this case until over seven months after the fact, and the notifying source (Sweet) of the ISRR determination should have been Casey, as Appeals' representative.

55.     Casey's omission of action where she was legally required to act contravened plaintiffs' Fifth Amendment rights under procedural due process. The trial could have been conducted a year earlier than it actually was; however, the plaintiffs complied in good faith with the terms of the negotiated agreement (Exhibit 1) so that Appeals could investigate and make its tax relief determination for the ISRR. Casey did not convey any position for the ISRR on behalf of Appeals to the plaintiffs, nor did she provide an explanation to the plaintiffs for not doing so. The plaintiffs had no established remedy to place the matter before a neutral authority to resolve the issue under proper procedural due process. Just because Sweet much later proclaimed that Casey made a determination (see Exhibit 4) did not make it factually so. If either Sweet or Casey had questions, comments, or objections to the contents of the plaintiffs' letters (Exhibits 3 and 5) or to the way in which the plaintiffs conducted themselves during this purported ISRR determination period, they had ample opportunity and were obligated to voice them to the plaintiffs or to a neutral authority on or before the October, 2012 re-calendared trial date. They did not.

56.     The plaintiffs consider that Sweet's July 25, 2012 letter (Exhibit 4) containing instructions for due process regarding plaintiffs' possible abuse of discretionary authority by Appeals were recklessly or deliberately misleading and constituted an abuse of process. In his role as opposing counsel for the now-decided Tax Court case, Sweet could not have possibly served as an impartial judge of any events

which may or may not have transpired during Appeals' purported investigation and determination of the

ISRR, so a fair hearing on the matter by Sweet was out of the question.  Additionally, it was clear to the

plaintiffs that Sweet was already involved to some degree in the illicit conduct which transpired during

and after the purported ISRR determination (Sweet did, after all, first notify plaintiffs that the ISRR

determination was purportedly denied – Casey did not, as she should have done – and Sweet's

notification came seven months after the purported date of Appeals' adverse decision, well after the

time when he was legally obligated by official procedure to have performed that function after the

adverse decision had purportedly been made), so there was no reason for plaintiffs to expect fairness

from Sweet or to trust his motives whatsoever in reviewing this matter for any abuse of discretionary

authority.  Any attorney of Sweet's occupational position, education, and experience would be expected

to know that the 'due process review' advocated by him actually denied the very due process to which

the plaintiffs were entitled by law.  The conduct contributing to this constitutional deprivation is

outrageous.  Consequently, this particular action constitutes misrepresentation through gross

negligence/reckless disregard or intentional acts of willful oppression, plus abuse of process, against

Fifth Amendment constitutional due process (both procedural and substantive) under *Bivens*.

57.     26 U.S.C. § 6015 governs the provisions of tax relief from joint and several liability on joint

returns, which includes innocent spouse and equitable relief.  26 U.S.C. § 6015(h) stipulates that:

> "The Secretary shall prescribe such regulations as are necessary to carry out the
> provisions of this section, including – (2) … regulations providing the opportunity
> for an individual to have notice of, and an opportunity to participate in, any
> administrative proceeding with respect to an election made under subsection
> (b) or (c) or a request for equitable relief under subsection (f) by the other
> individual filing the joint return."

Those regulations promulgated by the Secretary (through the Commissioner of the IRS) include 26 C.F.R.

§ 601.106.  For cases docketed in Tax Court, 26 C.F.R. § 601.106(d) provides regulatory guidance for

administrative proceedings under Appeals' purview, which includes Appeals' purported determination

of the ISRR.

58.     The plaintiffs advocate that Casey's conduct, comprised solely of mailing a form letter to

plaintiffs requesting completion of Form 8857, did not constitute any meaningful effort to conduct a

*bona fide* administrative proceeding under the provisions of 26 C.F.R. § 601.106(d) and 26 U.S.C. § 6015.

Although the plaintiffs did not complete the Form 8857 requested by Casey in her form letter, they did

provide detailed justification for that action, along with associated questions and concerns (see Exhibit

4) by which to engage Casey in discussion of, and to assist in the determination for, the ISRR.  Casey

could have written to the plaintiffs, calling them crazy or irresponsible for adopting this strategy.  She

had the option to simply answer their questions and concerns outright.  She might have told the

plaintiffs to either complete the Form 8857 or risk denial of the ISRR.  Casey could have responded to

the plaintiffs in any number of ways which might have constituted an administrative proceeding of some

sort.  However, Casey chose another solution; she simply did not respond to the plaintiffs at all.  At this

juncture, in effect, she denied the plaintiffs any form of administrative proceeding, violating the terms of

the negotiated agreement between the plaintiffs and Hu of October 4, 2011 (Exhibit 1) and the

provisions contained in 26 C.F.R. § 601.106 and 26 U.S.C. § 6015.  Casey did not even try to justify her

conduct to the plaintiffs after-the-fact.  This makes Casey's conduct negligent at best, and it is very

probable that her omissions actually constitute misrepresentation through gross negligence/reckless

disregard or intentional conduct of willful oppression.  She also denied the plaintiffs their Fifth

Amendment constitutional due process rights by this action.

59.     Additionally, Rev. Proc. 2003-19, Sec. 2.03 provides that:

> "To request relief under section 6015, a requesting spouse must file a Form
> 8857, "Request for Innocent Spouse Relief," *or a written statement with the*
> *Internal Revenue Service signed under penalties of perjury, containing the same*
> *information required on Form 8857.*"  (Italics added.)

Given that plaintiff Amy E. Reiff submitted her ISRR to the Tax Court, properly serving opposing counsel,

with corresponding justification contained in her narrative; and given that her submission to the Tax

Court came with the automatic proviso that her signature on a document introduced to the Tax Court is

subject to penalties of perjury; and given that this document actually was or should have been included as part of the ISRR administrative file purportedly submitted by Sweet to Casey in the October-November, 2011 timeframe; plaintiffs met these official procedural standards.   Consequently, Form 8857 was not a necessary requirement under these circumstances, and if the ISRR submission did not completely render the information required for Appeals to properly make an ISRR determination, or if there was some question involving its use as an instrument under Rev. Proc. 2003-19, Sec. 2.03, then Casey was reasonably and legally duty-bound to ask questions and/or to request additional facts from the plaintiffs accordingly.   At the very least, Casey was obligated to notify the plaintiffs that their ISRR submission to the Tax Court was not a suitable substitute for Form 8857.   She made no attempt to do so. That's definitely negligence, and probably gross negligence and/or negligence with wanton disregard, too, if not tortious intent.   As previously noted, it is also a contravention of the Fifth Amendment's due process clause of the Constitution.

60.      Rev. Proc. 2003-19, Sec. 4.01 stipulates that the IRS (through Appeals, in this case) will issue a preliminary determination letter based on the merits of the claim (in this case, the ISRR).   Even presuming in illustration that the plaintiffs did not cooperate whatsoever with Appeals during the ISRR determination process (which is not borne up by the facts of this case (see Exhibit 3) and which the plaintiffs adamantly deny), Casey was legally obligated to send plaintiffs a preliminary determination letter stipulating an adverse decision citing the plaintiffs' supposed non-cooperation.   However, Casey did and said nothing, and consequently, did not comply with this official procedure's requirement.   It denied the plaintiffs any meaningful form of administrative proceeding, and it did not allow for the plaintiffs to obtain due process thereafter.   Casey's omission is negligence at best, and it is most likely gross negligence/reckless disregard and misrepresentation through gross negligence/reckless disregard or intentional conduct.   The Fifth Amendment's due process clause was also violated accordingly.

61.     Up to this point in time, the plaintiffs have discussed duty, breach of that duty, causation, and

proximate cause of the negligent and intentional tortious conduct by Casey and Sweet against them.

The resultant damages take three forms.

    a.     First, the Tax Court trial was effectively and unnecessarily delayed by a year or more due

to the defendants' illicit conduct.   Second, during that time period and thereafter, the plaintiffs incurred

considerable and easily avoidable legal costs associated with this issue (outside of and separate from the

principal tax issues contained in the now-decided and unreviewable Tax Court case), had the ISRR

determination actually been properly conducted by Appeals.   Third, Casey's and Sweet's illicit conduct

brought the purported review of the ISRR and its aftermath to the forefront of the Tax Court case and its

proper tax issues, causing the plaintiffs to spend additional and unnecessary time and expense dealing

with and trying to understand this particular matter, when that time and expense could and should have

been used for the more germane issues contained in the Tax Court case.

    b.     The third element, particularly, brought infliction of emotional distress, personal

humiliation, and mental anguish on the plaintiffs through the gross negligence/reckless disregard or

through intentional conduct by the defendants.   Casey and Sweet, members of a powerful federal

organization with control over the nation's purse-strings, knowingly and illegally used their superior

governmental power against the plaintiffs' inferior position as *pro sésé* litigants in the Tax Court case,

committing torts and constitutional contraventions in the process.   Additionally, both Casey and Sweet

negligently and intentionally caused emotional distress to the plaintiffs under the standards of the FTCA

(for degree of damages only under District of Columbia law).

    c.     The plaintiffs incrementally realized that something was askew with the defendants'

conduct on August 13, 2011 and thereafter, and they believed that they could do little or nothing about

the ISRR situation at that time in light of the more immediate issues associated with the upcoming Tax

Court trial.   The principal scope of the emotional distress/mental anguish damages to the plaintiffs was

within themselves and between each other, in their continued dealings with IRS employees (most notably, Sweet), and in the Tax Court case generally.  As collateral damage, Casey's and Sweet's conduct also adversely affected plaintiffs' business matters and other personal relationships.

**Defenses Against FTCA Claims (Overview) – Discretionary Function Exception.**

62.     Although certain acts and omissions within the scope of governmental employment authority are described in this Complaint and its Exhibits as 'abuse[s] of discretionary authority,' these acts and omissions do not automatically fall subject to the discretionary function exception described in Red Lake Band of Chippewa Indians v. United States, 800 F.2d 1187 (D.C. Cir. 1986), which is designed to protect the United States and its governmental entities from liability which would seriously handicap its operations.  Although the FTCA does not conclusively define what constitutes a discretionary function, the acts and omissions described in this Complaint under the FTCA's provisions constitute ordinary, day-to-day acts of government enterprise (such as responding in some way to regular course-of-business mail requests, as may be found in Exhibits 3 and 5) which do not significantly affect the operations of the United States and its governmental entities.  Gray v. Bell, 712 F.2d 490 (D.C. Cir. 1983).

63.     Under Berkovitz by Berkovitz v. United States, 486 U.S. 531, 108 S. Ct. 1954, 100 L. Ed.2d 531 (1988), a two-pronged test ascertains whether the discretionary function exception applies.  First, it must be ascertained whether the act or omission involved an element of judgment or choice; and second, presuming that the first part of the two-pronged test actually did involve an element of judgment or choice, whether that particular judgment or choice is of the type that Congress intended to shield from tort liability.  Elder v. United States, 312 F.3d 1172 (10th Cir. 2002).

64.     Not every discretionary act involving choice or judgment was intended by Congress to be covered under the discretionary function exception under the FTCA.  Griffin v. United States, 500 F.2d 1059, 24 A.L.R. Fed. 441 (3rd Cir. 1974).  Under these circumstances, the Court must consider its ability to evaluate the act or omission in light of the ability of the United States and its government entities to

properly perform the administration of government as regulator of private individuals' conduct under political, economic, and social considerations.  United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 104 S. Ct. 2755, 81 L. Ed.2d 660 (1984), United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L. Ed.2d 335 (1991), and Nevin v. United States, 696 F.2d 1229 (9th Cir. 1983).  In this particular instance, the level and form of the defendants' conduct cannot be said to influence policy or to affect the operations of the Federal Government adversely.  The acts and omissions performed by the defendants, as described in this Complaint, were day-to-day activities and decisions which merely involved responding to routine requests and queries, had they been performed properly.  When Casey sent her form letter to the plaintiffs (Exhibit 2), they promptly responded with information and associated questions (Exhibit 3).  Casey could and should have routinely responded to the plaintiffs' letter, but she did not.  When Sweet informed the plaintiffs that the ISRR had been denied by Appeals (Exhibit 4), after quick consideration, the plaintiffs sent their allegations of misconduct (Exhibit 5) to both Casey and Sweet.  Again, neither of those defendants responded to the plaintiffs' queries, both of which comprised mere written requests for information on the ISRR determination.

65.    Boyle v. United Technologies Corp., 487 U.S. 500, 108 S. Ct. 2510 (1988) sets a federal law procedural standard that if a defendant fails "to act in accord with a specific mandatory directive {statutes, regulations, etc.}, the discretionary function exception does not apply."

a.    Throughout the course of this Complaint, several statutes, regulations, and corollary official procedures have been extensively cited and discussed, as have been the corresponding tortious violations of those legal authorities performed by Casey and Sweet.  Whatever degree of discretionary decision leeway that could possibly exist on behalf of the defendants for their conduct described in this civil action, agency policy (such as the required conduct and procedures found in 26 C.F.R. § 601.106 and Rev. Proc. 87-24, already discussed in some detail in this Complaint) leaves no room for the exercise of the defendants' judgment for not responding whatsoever to the plaintiffs' information and query letters

(Exhibits 3 and 5), thereby transforming those acts and omissions by the defendants to ministerial ones within the waiver of immunity.  Appleton v. United States, 98 F. Supp. 2d 30 (D.D.C. 2000).  The first prong of the Elder test is therefore unsuccessful in this case for both defendants.

      b.      Additionally, Casey and Sweet would each be hard-pressed to justify that their conduct outlined throughout this Complaint was that which Congress intended to protect from tort liability. When the defendants did not make any reasonable attempt to live up to the provisions of the negotiated agreement (Exhibit 1) which the IRS itself (through opposing counsel Hu) proposed to the plaintiffs on behalf of the IRS, that is not the conduct which Congress intended to protect.  The public policy considerations of the IRS negating its own agreements with taxpayers through negligence, trickery, and deceit in a simple civil tax litigation matter are too great to justify that measure.  Up to this point in time, there have been no justifications or excuses provided by the defendants on their own behalf for denying this protected liberty to the plaintiffs – only continuous illicit silence.  Congress would never intend to permit the defendants to benefit from the discretionary function exception when the defendants themselves created this adverse situation when they violated the provisions of the negotiated agreement (Exhibit 1) and existing statutory authority.  Consequently, like the first prong, the second prong of the Elder test fails.  Neither Casey nor Sweet is entitled to use this defense.

**Immunities Against *Bivens* Claims (Overview) – Absolute Immunity (Sweet).**

66.      Since the matter of the purported ISRR determination involved acquiring evidence which might have been used in the Tax Court case by Sweet in his role as opposing counsel, any activities performed by Sweet that are associated with the ISRR determination are not those activities normally performed as a part of legal advocacy under prosecutorial immunity (under which civil tax litigators fall purview subject to Fry v. Melaragno, 939 F.2d 832 (9th Cir. 1991)), thereby equating those activities as not "intimately" associated with the judicial phase of the civil tax litigation process. Those activities which

are not part of legal advocacy, therefore, are not entitled to absolute immunity. <u>Butz v. Economou</u>, 438 U.S. 478, 98 S. Ct. 2894, 57 L. Ed. 895 (1978) and <u>Barbera v. Smith</u>, 836 F.2d 96 (2d Cir. 1987).

      a.      Under those provisions, Sweet is not entitled to absolute immunity under *Bivens* during the period October 4, 2011 (the date when Hu submitted the negotiated agreement-recalendar motion (Exhibit 1) to the Tax Court, which duly approved it) through at least August 13, 2012 (the date when the plaintiffs reasonably discovered some of Casey's and Sweet's contraventions of official procedure, regulation, and law as pertains to *Bivens* claims and submitted Exhibit 5 to each of them) for any and all matters pertaining to the purported ISRR determination.

      b.      Plaintiffs also advocate that Sweet cannot claim absolute immunity for any time period after August 13, 2012 for those matters relating solely to and which logically extend from the purported ISRR determination by Appeals, their associated issues, and the defendants' corresponding conduct.

      c.      It should also be noted that Sweet's failure to adhere to the provisions of Rev. Proc. 87-24, Sec. 2.09 (when he did not timely notify the plaintiffs that Casey had transferred the ISRR administrative file back to him to prepare for trial in December, 2011) transpired as the non-performance (omission) of an administrative duty (also not "intimately" associated with the judicial phase of the tax litigation process) and, therefore, Sweet is not entitled to absolute immunity for that incident. <u>Fry v. Melaragno</u>, *supra*.

      **Immunities Against *Bivens* Claims (Overview) – Qualified Immunity (Sweet and Casey).**

67.      Casey's and Sweet's actions (or omissions where action should have been performed) fail the two-part inquiry for qualified immunity established by <u>Anderson v. Creighton</u>, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed.2d 523 (1987).  The plaintiffs' constitutional rights under the Due Process Clause of the Fifth Amendment were (a) clearly established and were (b) sufficiently clear that a reasonable person in both Casey's and Sweet's individual positions would have understood that their conduct (both acts and omissions) violated those rights.

a.      In this Complaint, there are several cited official procedures, regulations, and laws (to include the Constitution itself) of which carry specific and mandatory obligations, and these have been clearly contravened by Casey and Sweet in their individual capacities.  <u>Abreu v. United States</u>, 468 F.3d 20 (10th Cir. 2006) and <u>Elder v. United States</u>, *supra*.  These legal authorities have already been discussed in some depth throughout this Complaint.  The laws, regulations, and official procedures are no secret to anybody – much less to the legal, accounting, and tax administration professionals at the IRS who use them regularly – and they are germane to the subject matter of this civil action, Appeals' purported ISRR determination process.  Their terms and provisions were and are transparent.  They were readily available to the defendants at the time of their conduct, and they were and are clearly comprehensible.  <u>Alexander v. Perrill</u>, *supra*, specifically states that the C.F.R. and other agency policies "can establish contours of clearly established law without resort to prior case law for exact factual circumstance" in *Bivens* actions.  Tax relief determination cases do not have a well-established track record in the legal arena, and regulations and their corollaries can and should serve as proper gauges for the defendants' conduct.  The plaintiffs' constitutional rights were clearly established.  Under that standard, therefore, both Casey and Sweet fail the first part of the two-pronged <u>Anderson</u> test.

b.      Second, the individual defendants cannot properly make a claim that they adhered to the "objective legal reasonableness" test of their conduct in light of the information which each possessed at the time of the alleged violations – there were and are no reasonable grounds for either Casey, Sweet, or any other like person in Casey's or Sweet's respective positions to believe that their (Casey's and Sweet's) respective conducts (both act and omissions), as described in this Complaint, did not violate plaintiffs' constitutional rights of due process of law under the Fifth Amendment.

c.      As Appeals' representative, Casey did not render any decision for plaintiffs' ISRR, nor did Casey explain to the plaintiffs why no decision was rendered by Appeals; Sweet did not inform plaintiffs that he had received the ISRR administrative file back from Casey until some seven months after

Appeals' purported ISRR decision was made, thereby allowing the plaintiffs to believe that they were still dealing with Casey and effectively denying plaintiffs that amount of time to prepare their case for trial (while Sweet retained that particular advantage for himself within his scope of employment); neither Casey nor Sweet made any attempt to explain or justify their (and possibly other parties') abuse of discretionary authority, tortious, and/or unconstitutional conduct through contraventions of official policy, regulation, and/or law (see Exhibit 5) to the plaintiffs regarding Appeals' purported review of the ISRR; Sweet attempted to run an illicit due process review with the plaintiffs through his office under color of federal law for any abuse of discretionary authority which might have occurred during Appeals' purported review of plaintiffs' ISRR; and, through the overt 'conspiracy of silence'/civil conspiracy, Sweet and Casey attempted to have plaintiffs' allegations of illicit conduct by Sweet, Casey, and other IRS staff undiscovered or otherwise obstructed through deceit and trickery (via their cover-up scheme) by any neutral authority within the IRS or elsewhere, in accordance with the findings of Harbury v. Deutch, 244 F.3d 956 (D.C. Cir. 2001).   In each and all of these instances, and in light of the negotiated agreement's provisions (Exhibit 1) and the previously-cited legal authorities which their conduct contravened, Casey and Sweet individually and objectively knew or should have reasonably known at the time of their actions that their conduct would violate the plaintiffs' Fifth Amendment constitutional rights under due process.  As was the case with the first part of the two-pronged Anderson test, Casey and Sweet also fail to meet the standards of the second part of that test.  Consequently, neither Casey nor Sweet is entitled to summary judgment under *Bivens* by pleading qualified immunity.

### Charges Against Defendants by Count
### (Not Including the Unknown/Unidentified IRS Employees)

### Count 1:
### Monetary Damages Judgment Pursuant to 26 U.S.C. § 1346
### (Against Defendant United States of America).

68.      Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

69.     The Federal Torts Claims Act, 28 U.S.C. § 1346, provides for monetary damages against federal officials who commit most negligent and some intentional torts acting under color of federal authority in their official capacities; the United States is appropriately substituted as sole defendant.

70.     Defendants Casey's and Sweet's acts and omissions associated with a purported Appeals-conducted ISRR determination for the plaintiffs, where and when they each failed to respond to or otherwise acknowledge the plaintiffs' provided information (Exhibit 3), were not in accordance with the negotiated agreement (Exhibit 1) by which both the plaintiffs and the defendants were bound.

71.     These acts and omissions constituted negligent tortious conduct which unreasonably caused damages to the plaintiffs, for which they should be compensated under these provisions.

72.     Pursuant to 28 U.S.C. § 7430, the plaintiffs are entitled to legal costs and expenses in the prosecution of this action.

## Count 2:
### Monetary Damages Judgment Pursuant to 26 U.S.C. § 1346
### (Against Defendant United States of America).

73.     Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

74.     The Federal Torts Claims Act, 28 U.S.C. § 1346, provides for monetary damages against federal officials who commit most negligent and some intentional torts acting under color of federal authority in their official capacities; the United States is appropriately substituted as sole defendant.

75.     Defendants Casey's and Sweet's acts and omissions associated with a purported Appeals-conducted ISRR determination for the plaintiffs, where and when they each failed to respond to or otherwise acknowledge the plaintiffs' allegations of abuse of discretionary authority (Exhibit 5), were not in accordance with the negotiated agreement (Exhibit 1) by which both the plaintiffs and the defendants were bound.

76.     These acts and omissions constituted negligent tortious conduct which unreasonably caused damages to the plaintiffs, for which they should be compensated under these provisions.

77.     Pursuant to 28 U.S.C. § 7430, the plaintiffs are entitled to legal costs and expenses in the prosecution of this action.

## Count 3:
## Monetary Damages Judgment Pursuant to 26 U.S.C. § 1346
## (Against Defendant United States of America).

78.     Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

79.     The Federal Torts Claims Act, 28 U.S.C. § 1346, provides for monetary damages against federal officials who commit most negligent and some intentional torts acting under color of federal authority in their official capacities; the United States is appropriately substituted as sole defendant.

80.     Defendants Casey's and Sweet's acts and omissions associated with a purported Appeals-conducted ISRR determination for the plaintiffs, where and when they each failed to provide Appeals' determination for the ISRR to the plaintiffs, were not in accordance with the negotiated agreement (Exhibit 1) by which both the plaintiffs and the defendants were bound.

81.     These acts and omissions constituted negligent tortious conduct which unreasonably caused damages to the plaintiffs, for which they should be compensated under these provisions.

82.     Pursuant to 28 U.S.C. § 7430, the plaintiffs are entitled to legal costs and expenses in the prosecution of this action.

## Count 4:
## Monetary Damages Judgment Pursuant to 26 U.S.C. § 1346
## (Against Defendant United States of America).

83.     Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

84.     The Federal Torts Claims Act, 28 U.S.C. § 1346, provides for monetary damages against federal officials who commit most negligent and some intentional torts acting under color of federal authority in their official capacities; the United States is appropriately substituted as sole defendant.

85.     Defendant Sweet's acts and omissions associated with a purported Appeals-conducted ISRR determination for the plaintiffs, where and when he failed to promptly notify the plaintiffs that the ISRR administrative file had been transferred to him to prepare for trial until some seven months after the time limit imposed on him by official procedure Rev. Proc. 87-24, were not in accordance with the negotiated agreement (Exhibit 1) by which both the plaintiffs and the defendants were bound.

86.     These acts and omissions constituted negligent tortious conduct which unreasonably caused damages to the plaintiffs, for which they should be compensated under these provisions.

87.     Pursuant to 28 U.S.C. § 7430, the plaintiffs are entitled to legal costs and expenses in the prosecution of this action.

### Count 5:
### Violation of the Fifth Amendment of the United States Constitution
### (*Bivens* Action Against Defendants Sharon A. Casey and Adam P. Sweet, Individually)

88.     Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

89.     In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court recognized a civil action for monetary damages against federal officials in their individual capacities for constitutional violations while acting under color of federal authority.

90.     Defendants Casey and Sweet performed acts and/or omissions during and after Appeals' purported review of the plaintiffs' ISRR, which violated the plaintiffs' Fifth Amendment constitutional due process rights, where and when they each failed to respond to or otherwise acknowledge the plaintiffs' provided information (Exhibit 3), were not in accordance with the negotiated agreement (Exhibit 1) by which both the plaintiffs and the defendants were bound.

91.     Under the objective standards outlined in <u>Anderson</u>, defendants Casey and Sweet knew, or should have reasonably known, that their respective acts and omissions would violate the plaintiffs' Fifth Amendment constitutional due process rights.

92.     Congress has not provided any alternative remedy or existing process to protect the plaintiffs' constitutionally-protected rights and interests violated by defendants Casey and Sweet.  This Court may, therefore, recognize a remedy for damages under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

### Count 6:
### Violation of the Fifth Amendment of the United States Constitution
### (*Bivens* Action Against Defendants Sharon A. Casey and Adam P. Sweet, Individually)

93.     Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

94.     In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court recognized a civil action for monetary damages against federal officials in their individual capacities for constitutional violations while acting under color of federal authority.

95.     Defendants Casey and Sweet performed acts and/or omissions during and after Appeals' purported review of plaintiffs' ISRR, which violated plaintiffs' Fifth Amendment constitutional due process rights, where and when they each failed to respond to or otherwise acknowledge plaintiffs' allegations of abuse of discretionary authority (Exhibit 5), were not in accordance with the negotiated agreement (Exhibit 1) by which both the plaintiffs and the defendants were bound.

96.     Under the objective standards outlined in <u>Anderson</u>, *supra*, defendants Casey and Sweet knew, or should have reasonably known, that their respective acts and omissions would violate the plaintiffs' Fifth Amendment constitutional due process rights.

97.     Congress has not provided any alternative remedy or existing process to protect the plaintiffs' constitutionally-protected rights and interests violated by defendants Casey and Sweet.  This Court may,

therefore, recognize a remedy for damages under Bivens v. Six Unknown Named Agents of the Federal

Bureau of Narcotics, 403 U.S. 388 (1971).

**Count 7:**
**Violation of the Fifth Amendment of the United States Constitution**
**(*Bivens* Action Against Defendants Sharon A. Casey and Adam P. Sweet, Individually)**

98.     Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reallege and incorporate by reference the

preceding paragraphs of this Complaint as though fully set forth herein.

99.     In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971),

the Supreme Court recognized a civil action for monetary damages against federal officials in their

individual capacities for constitutional violations while acting under color of federal authority.

100.    Defendants Casey and Sweet performed acts and/or omissions during and after Appeals'

purported review of plaintiffs' ISRR, which violated plaintiffs' Fifth Amendment constitutional due

process rights, where and when they each failed to provide Appeals' determination for the ISRR, were

not in accordance with the negotiated agreement (Exhibit 1) by which both the plaintiffs and the

defendants were bound.

101.    Under the objective standards outlined in Anderson, *supra*, defendants Casey and Sweet knew,

or should have reasonably known, that their respective acts and omissions would violate plaintiffs' Fifth

Amendment constitutional due process rights.

102.    Congress has not provided any alternative remedy or existing process to protect the plaintiffs'

constitutionally-protected rights and interests violated by defendants Casey and Sweet.  This Court may,

therefore, recognize a remedy for damages under Bivens v. Six Unknown Named Agents of the Federal

Bureau of Narcotics, 403 U.S. 388 (1971).

**Count 8:**
**Violation of the Fifth Amendment of the United States Constitution**
**(*Bivens* Action Against Defendants Sharon A. Casey and Adam P. Sweet, Individually)**

103.    Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

104.    In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized a civil action for monetary damages against federal officials in their individual capacities for constitutional violations while acting under color of federal authority.

105.    Defendants Casey and Sweet performed acts and/or omissions during and after Appeals' purported review of plaintiffs' ISRR, which violated the plaintiffs' Fifth Amendment constitutional due process rights, where and when they each failed to answer the plaintiffs' queries (Exhibit 5) about the IRS personnel and the circumstances surrounding alleged abuses of authority, torts, and constitutional violations during Appeals' purported ISRR determination, and these acts and omissions effectively denied the plaintiffs any opportunity for due process.

106.    Under the objective standards outlined in Anderson, *supra*, defendants Casey and Sweet knew, or should have reasonably known, that their respective acts and omissions would violate the plaintiffs' Fifth Amendment constitutional due process rights.

107.    Congress has not provided any alternative remedy or existing process to protect plaintiffs' constitutionally-protected rights and interests violated by defendants Casey and Sweet.  This Court may, therefore, recognize a remedy for damages under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

**Count 9:**
**Violation of the Fifth Amendment of the United States Constitution**
**(*Bivens* Action Against Defendants Sharon A. Casey and Adam P. Sweet, Individually)**

108.    Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

109.    In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971),

the Supreme Court recognized a civil action for monetary damages against federal officials in their

individual capacities for constitutional violations while acting under color of federal authority.

110.    Defendant Sweet's acts and omissions associated with a purported Appeals-conducted ISRR

determination for plaintiffs, where and when he failed to promptly notify the plaintiffs that the ISRR

administrative file had been transferred to him to prepare for trial until some seven months after the

time imposed on him by official procedure, were not in accordance with the negotiated agreement

(Exhibit 1) by which both the plaintiffs and the defendants were bound.

111.    Under the objective standards outlined in <u>Anderson</u>, *supra*, defendant Sweet knew, or should

have reasonably known, that his acts and omissions would violate the plaintiffs' Fifth Amendment

constitutional due process rights.

112.    Congress has not provided any alternative remedy or existing process to protect plaintiffs'

constitutionally-protected rights and interests violated by defendant Sweet.  This Court may, therefore,

recognize a remedy for damages under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of

Narcotics</u>, 403 U.S. 388 (1971).

**Count 10:**
**Violation of the Fifth Amendment of the United States Constitution**
**(*Bivens* Action Against Defendant Adam P. Sweet, Individually)**

113.    Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reallege and incorporate by reference the

preceding paragraphs of this Complaint as though fully set forth herein.

114.    In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971),

the Supreme Court recognized a civil action for monetary damages against federal officials in their

individual capacities for constitutional violations while acting under color of federal authority.

115.    Defendant Sweet's acts and omissions associated with a purported Appeals-conducted ISRR

determination for plaintiffs, where and when he attempted to conduct an illicit due process review for

abuse of discretionary authority allegations made regarding Appeals' purported determination of the plaintiffs' ISSR between himself and the plaintiffs (see Exhibit 4).

116.     Under the objective standards outlined in <u>Anderson</u>, *supra*, defendant Sweet knew, or should have reasonably known, that his acts and omissions would violate the plaintiffs' Fifth Amendment constitutional due process rights.

117.     Congress has not provided any alternative remedy or existing process to protect the plaintiffs' constitutionally-protected rights and interests violated by defendant Sweet.  This Court may, therefore, recognize a remedy for damages under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

**Count 11:**
**Violation of the Fifth Amendment of the United States Constitution**
(***Bivens* Action Against Defendants Sharon A. Casey and Adam P. Sweet, Individually)**

118.     Plaintiffs George Russell Reiff, Jr. and Amy E. Reiff reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

119.     In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court recognized a civil action for monetary damages against federal officials in their individual capacities for constitutional violations while acting under color of federal authority.

120.     Defendants Casey and Sweet violated the plaintiffs' Fifth Amendment rights to due process by entering into a civil conspiracy to cover up their (Casey's, Sweet's, and perhaps other IRS employees) contraventions of official procedure, regulation, and law; along with resultant torts and unconstitutional conduct they performed against the plaintiffs, as are outlined, but which are not limited to, Counts 1, 2, 5, and 6.

121.     Casey and Sweet entered into this civil conspiracy under purported color of law for personal, non-business-related reasons.

122.     Under the objective standards depicted in <u>Anderson</u>, *supra*, defendants Casey and Sweet knew,

or should have reasonably known, that their respective acts and omissions would violate the plaintiffs'

Fifth Amendment constitutional due process rights.

123.     Congress has not provided any alternative remedy or existing process to protect the plaintiffs'

constitutionally-protected rights and interests violated by defendants Casey and Sweet.  This Court may,

therefore, recognize a remedy for damages under <u>Bivens v. Six Unknown Named Agents of the Federal</u>

<u>Bureau of Narcotics</u>, 403 U.S. 388 (1971).

### Damages and Request for Relief.

124.     The plaintiffs respectfully ask to be granted the following damages by the Court:

   a.     Compensatory damages under the FTCA for negligent tortious conduct by Casey and

Sweet (and under which the United States is properly substituted as sole defendant under these

provisions), as elsewhere described in this Complaint; and,

   b.     Compensatory and punitive damages under *Bivens*, as elsewhere described in this

Complaint, against Casey and Sweet individually for the following:  Gross negligence/intentional tortious

conduct, infliction of emotional distress/personal humiliation/mental anguish (under legally-accepted

standards for gross negligence/reckless disregard and/or by intentional acts or omissions),

misrepresentation, abuse of process, and civil conspiracy; each and all of which were also violations of

the plaintiffs' Fifth Amendment constitutional rights under due process.

125.     The total dollar amount of relief requested in this civil action, $3,600,000.00 (three million, six-

hundred thousand dollars), does not exceed that amount demanded in the exhausted administrative

claim previously submitted by the plaintiffs to the IRS claims office.

126.     As previously noted by plaintiffs in this Complaint, given individual defendants Casey's and

Sweet's illicit 'conspiracy of silence' (civil conspiracy) regarding this matter; which has precluded the

plaintiffs from knowing or being reasonably expected to know the identities of other parties (currently

named as "the Unknown/Unidentified Internal Revenue Service Employees," or words to that effect) and their corresponding roles and potential tortious acts/omissions and/or contraventions of the plaintiffs' constitutional rights involved in this case, both officially and individually, some of which will fall subject to the provisions of *Bivens*, others to those of the FTCA, and the balance under the purview of both.

a.      For example, the plaintiffs do not know to what extent and to which specific occurrences the element of retaliation against the plaintiffs by the defendants, both those known in this Complaint and those Unknown/Identified Internal Revenue Service Employees, may have played a part in this scenario.  While there is considerable indication of and the plaintiffs' belief that retaliation played a significant part in this civil action, the plaintiffs do not have sufficient information (due to Casey's and Sweet's 'conspiracy of silence') at this time to incorporate that element in their tort and constitutional contravention charges.  As will also be the case for other additional elements and charges to this Complaint, that will be determined only when discovery is conducted.

b.      The plaintiffs expect to change and/or specify additional charges and/or name additional defendants during discovery or after discovery is complete and, if circumstances warrant, the plaintiffs will request the Court, by Amended Complaint or other appropriate vehicle, to revise and otherwise change the named parties, charges, pertinent elements in this civil action, and the monetary damage request amounts contained in this Complaint accordingly.

**Conclusion.**

127.    The plaintiffs request that the Court authorize reasonable discovery in light of the allegations contained in this Complaint at its earliest convenience.  Again, the plaintiffs thank the Court for the opportunity to present their case.

DATE:  August 19, 2014

George Russell Reiff, Jr.
*Pro Sé* Plaintiff
3317 Southgate Drive, #105
Alexandria, VA  22306
Telephone Number:  (703) 660-6941
E-mail:  russreiff@gmail.com

DATE:  August 19, 2014

Amy E. Reiff
*Pro Sé* Plaintiff
3317 Southgate Drive, #105
Alexandria, VA  22306
Telephone Number:  (703) 660-6941

```
                                          ┌─────────────────────────┐
                                          │  U S. TAX COURT         │
                                          │      FILED AT           │
                                          │  Washington, D.C.       │
                                          │                         │
                                          │   OCT - 4 2011          │
                                          │                         │
                                          │  _____    _____     │
                                          └─────────────────────────┘
```

### UNITED STATES TAX COURT

GEORGE RUSSELL REIFF, JR.       )
AMY REIFF,                   )
                       )
           Petitioners,    )
                       )
           v.             )    Docket No.   21771-10S
                       )
COMMISSIONER OF INTERNAL REVENUE,   )
                       )
           Respondent.    )

### RESPONDENT'S MOTION FOR CONTINUANCE OF TRIAL

RESPONDENT MOVES, pursuant to the provisions of Tax Court Rule 133, that the Court remove this case from the trial session of the Court scheduled to commence at Washington, DC, on October 3, 2011, and restore the case to the general trial docket.

IN SUPPORT THEREOF, respondent respectfully states:

1.    On September 14, 2011, petitioner Amy Reiff submitted a "Pretrial Motion (Petitioner Amy Reiff): Innocent Spouse Relief Request" which was filed by the Court as "Second Amendment to Petition by Petitioner Amy Reiff" wherein she requested Innocent Spouse Relief.

2.    Due to the fact that this case was set for the October 3, 2011 trial session, respondent was unable to evaluate the merits of petitioner Amy Reiff's claim in accordance with respondent's internal procedures. Respondent's internal procedures require Petitioner Amy Reiff's claim, along with the

```
                                    ┌─────────────────────────────┐
                                    │    U. S. TAX COURT          │
                                    │     G R A N T E D           │
                                    │     G R A N T E D           │
                                    │                             │
                                    │     OCT - 4 2011            │
                                    │                             │
                                    │  (Signed) HOWARD A. DAWSON. JR. │
                                    │                             │
                                    │                       JUDGE │
                                    └─────────────────────────────┘
```

EXHIBIT 1-1

Docket No. 21771-10S        - 2 -

administrative file, to be sent to respondent's Cincinnati

Centralized Innocent Spouse Operations.

    3.    This motion is not made for the purpose of delay.  A

continuance of this case would allow respondent the opportunity

to make a determination on the claim for relief from joint and

~~several~~ liability and possibly conserve judicial resources.

    4.    Respondent does not know whether petitioners object to

this motion.

    5.    This is the first request for the continuance of this

case.

    WHEREFORE, respondent requests that this motion be granted.

                              WILLIAM J. WILKINS
                              Chief Counsel
                              Internal Revenue Service


Date:____OCT 4  2011____      By: _____
                              SUSAN S. HU
                              Associate Area Counsel
                              (Small Business/Self-Employed)
                              Tax Court Bar No. HS0427
                              P.O. Box 50585
                              Washington, DC 20091
                              Telephone: (202) 874-8143

0.0OF COUNSEL:
THOMAS R. THOMAS
Division Counsel
(Small Business/Self-Employed)
NANCY B. ROMANO
Area Counsel
(Small Business/Self-Employed:Area 2)

EXHIBIT 1-2

Docket No. 21771-10S

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing MOTION FOR

CONTINUANCE was served on petitioners by hand delivering and

mailing the same on _____OCT 4  2011_____ in a postage paid

wrapper addressed as follows:

          George Russell Reiff, Jr. & Amy Reiff
          3317 Southgate Dr.
          #105
          Alexandria, VA 22306

Date: ___OCT 4  2011___        _____
                               SUSAN S. HU
                               Associate Area Counsel (Washington,
                               Group 2)
                               (Small Business/Self-Employed)
                               Tax Court Bar No. HS0427

EXHIBIT 1-3

**IRS** Department of the Treasury
Internal Revenue Service
P.O. Box 120053, Stop 840F
Covington  KY  41012

In reply refer to: 0297226697
Nov. 01, 2011  LTR 3659C  EO
████████  200712 30
                    00015829
                BODC: SB

AMY E REIFF
3317 SOUTHGATE DR APT 105
ALEXANDRIA  VA  22306-3317

Social Security Number: ████████

                    Form:  1040
            Tax Year(s):  2007

            Contact Person:  Ms. Casey
Employee Identification Number:  1000197591
       Contact Telephone Number:  866-897-4270 X 8225
                 FAX Number:  859-669-3717

Dear Taxpayer:

Thank you for your correspondence of Sep. 14, 2011.

Although you filed a Tax Court petition and your Innocent Spouse claim
will be reviewed by the Tax Court as part of your Tax Court case
21771-10S, the IRS is considering your claim in order to develop its
position regarding your claim for purposes of your Tax Court case.  In
order to consider the claim, we need the following information: Form
8857.

Please complete the enclosed Form 8857, Request for Innocent Spouse
Relief and return it within 30 days of the date of this letter, in the
enclosed envelope.

IF YOU HAVE ANY QUESTIONS:

- See Publication 971, Innocent Spouse Relief (And Separation of
  Liability and Equitable Relief), for more information. Visit
  www.irs.gov or call 1-800-TAXFORM to order a copy.

- Call the contact person shown on this letter between 6:00 a.m.
  and 4:30 p.m.(ET), or

- Write to us at the address shown on this letter. Please include a
  copy of this letter and your best daytime phone number with the
  hours we can reach you.

Best daytime phone number    (    )_____

Best time to call during the day: _____

EXHIBIT 2-1

```
                                              0297226697
                          Nov. 01, 2011  LTR 3659C  E0
                          ██████████      200712 30
                                              00015830
```

AMY E REIFF
3317 SOUTHGATE DR APT 105
ALEXANDRIA  VA  22306-3317


Remember to keep a copy of this letter for your records.

                    Sincerely yours,

                    *Alicia A. Hagen* (signature)

                    Alicia A. Hagen, Operations Manager
                    Innocent Spouse

Enclosures:
Copy of this letter
Envelope
Form 8857

EXHIBIT 2-2

December 1, 2011

Ms. Casey (Employee Identification Number: 1000197591)    Amy & Russ Reiff
Internal Revenue Service                                   3317 Southgate Drive, #105
P.O. Box 120053, Stop 840F                                 Alexandria, VA 22306
Covington, KY 41012                                        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**SENT BY MAIL AND BY FAX TO 859-669-3717**

RE: 0297226697, copy attached for two separate documents (one sent to each of us)

Dear Ms. Casey,

To make this a relatively simple process, we are submitting a single consolidated response from the both of us regarding this matter for tax year 2007.

First, Amy Reiff did not submit any correspondence to your office on September 14, 2011 or any other date. Most likely, this matter was referred to your office from opposing counsel/respondent in our Tax Court case 21771-10S. Before we proceed further, we would like a copy of anything which you received from any party regarding this matter. It will give us a better understanding of what has transpired between the time which opposing counsel/respondent requested and was granted a continuance of trial by the Court and the current date.

Let it be clearly understood that, although we posed no objection to opposing counsel's/respondent's motion, and that the rationale presented for the motion of continuance of trial was for the Internal Revenue Service to "evaluate the merits of petitioner Amy Reiff's claim in accordance with respondent's internal procedures," it is our contention that Amy Reiff's pretrial motion for Innocent Spouse Relief dated September 14 (which is perhaps the document which you referenced in Paragraph 1 above) already contains sufficient information by which you can make a proper determination. (Presumably, you already have some or the entire administrative file used by opposing counsel/respondent in your hands.)

Additionally, while attempting to settle this matter administratively with your Memphis Service Center's representative Thressa Massey, Russ Reiff, in a May 10, 2010 letter, clearly stipulated his concern for and requested the IRS's position on Innocent Spouse Relief, Injured Spouse Relief, or release from joint and several liability for his spouse Amy Reiff. To date, not a single Agency representative has come forth with any information or stated position. It is our contention that this issue could have easily have been clarified at this administrative level via a Form 8857 or any other instrument before we went to trial and submitted Amy Reiff's Innocent Spouse Relief request before the Court. The fact that you request this document now appears to have underlying motives which are not clear to us, and we ask that you now concisely stipulate them at your earliest convenience.

---

Amy & Russ Reiff: Innocent Spouse Relief Request (Covington Service Office)                Page 1

EXHIBIT 3-1

To further complicate matters, opposing counsel/respondent has already submitted two answers to the Innocent Spouse Relief request submitted by each of us to the Tax Court. Each answer submitted by opposing counsel/respondent clearly asks that the Innocent Spouse Relief requested for Amy Reiff be denied. In our opinion, those answers represent the Internal Revenue Service's position regarding our Innocent Spouse Relief request before the Tax Court, and your position is already clearly established. As things now stand, it would be ludicrous for us to think otherwise. If this rationale is incorrect, please provide us with a complete explanation accordingly.

Last, your notification to Russ Reiff that you have already received a Form 8857 from Amy Reiff is clearly in error, unless you already equate Amy Reiff's Innocent Spouse Relief request from the Tax Court dated September 14 in lieu of that particular form. Either way, we are extremely confused, and we ask that you clarify your position on this matter.

The bottom line is that this request appears to be duplicative with information which you already possess; it is untimely, given that the IRS had clear notification and ample time that this issue was of great concern to us, and it did absolutely nothing to resolve the matter before it went to trial; and the IRS already has an established position before the Tax Court which asks that Amy Reiff's Innocent Spouse Relief request be denied.   Consequently, we do not see a bona fide purpose for, and we decline to submit, either Form 8857 or Form 12508 at this time.

If you have any information, rationale, and/or documents which might be useful in resolving this matter, please submit it/them to us *in writing ONLY* to the address above. We will, of course, offer you the same courtesy. Your cooperation is appreciated.

Sincerely,

Amy Reiff

Amy Reiff

G. Russell Reiff

G. Russell Reiff

Encl:
a/s (Four (4) pages, consecutively numbered)

EXHIBIT 3-2



OFFICE OF THE CHIEF COUNSEL

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
OFFICE OF DIVISION COUNSEL
SMALL BUSINESS/SELF-EMPLOYED
P.O.BOX 50585
WASHINGTON, D.C. 20091
(202) 874-1586
FAX: (202) 874-1865

JUL 25 2012    CC:SB:2:WAS:2:APSweet
TL-21771-10 S

<u>Via Regular Mail</u>

George and Amy Reiff
3317 Southgate Drive, #105
Alexandria, VA 22306

   In re: <u>George R. Russell Reiff, Jr. and Amy Reiff v Commissioner</u>
   <u>Docket No. 21771-10 S</u>
   <u>Washington, D.C. Tax Court Trial Sesssion: October 1, 2012</u>

Dear Mr. and Mrs. Reiff

   Your case has been set for trial again the week beginning October 1, 2012, in
Washington, D.C. We need to meet to start preparing for trial. I suggest we meet at my
office on August 16, 2012 at 2:00 pm. At our meeting, we will be discussing the
following issues.



08-19-14
SCHEDULE C ISSUES
DECIDED BY THE
TAX COURT ARE
REDACTED.

**B. Mrs. Reiff's Innocent Spouse Claim**

   a. Mrs. Reiff raised this claim with her pre-trial motion filed on September 14,
   2011. I referred her claim to our Appeals division for consideration, but

EXHIBIT 4-1

TL-21771-10 S                                    2

Mrs. Reiff was not responsive to the Appeals division when they asked her
for information.  Accordingly, her request for relief was denied.

If Mrs. Reiff still wishes to pursue her claim for relief, she needs to show
that the Appeals officer abused their discretion when denying the claim.
Please bring to our meeting any and all information that you have showing
this abuse of discretion.

Please also bring to our meeting any other information you regard as relevant to
your case.  Call me at (202) 874-1318 with any questions or if you need to reschedule.
My office address is below my signature line.

Sincerely,

Adam P. Sweet
Attorney (Washington, Group 2)
(Small Business/Self-Employed)
455 Massachusetts Ave. NW
5th Floor
Washington, D.C., 20001

EXHIBIT 4-2

August 13, 2012

Ms. Casey (Employee Identification Number: 1000197591)      Amy & Russ Reiff
Internal Revenue Service                                     3317 Southgate Drive, #105
P.O. Box 120053, Stop 840F                                   Alexandria, VA  22306
Covington, KY  41012

**SENT BY MAIL AND FAX TO 859-669-3717 (Ms. Casey)**
**SENT BY MAIL AND FAX TO 202-874-1865 (Mr. Sweet)**

SUBJECT: Innocent Spouse Relief Request - Mrs. Amy Reiff (0297226697)

RE:  (1) Your letter dated November 1, 2011 and (2) our reply dated December 1, 2011

Dear Ms. Casey,

You had requested information from and about Mrs. Amy Reiff via Form 8857 in RE: (1), to which we responded in RE:
(2). Our response posed several questions and concerns to you in your role as the IRS official responsible to develop the
Service's position on Mrs. Reiff's Innocent Spouse Relief request before the U.S. Tax Court. To date, we received no reply
from you or anyone else in your division addressing those concerns and questions; nor have we received anything from
you or anyore in your division which stipulates the Service's position regarding this matter; nor have we been presented
with any questions, objections, or concerns about our submission (RE: (2)) from anybody in the Appeals division.  In sum,
we have heard absolutely nothing from anybody in the Appeals division since we submitted RE: (2) on December 1, 2011.
Consequently, we are submitting this letter to you in hopes that you will clarify several issues below.

We received a communiqué from opposing counsel/respondent Adam Sweet dated July 25 which included, among other
items, the following information:

"{Opposing counsel} referred {Mrs. Reiff's} claim to our Appeals division for consideration, but Mrs. Reiff was not
responsive to the Appeals division when they asked her for information.  Accordingly, her request for relief was denied."

It is opposing counsel's contention that if Mrs. Reiff wishes to pursue her claim for relief, we need to demonstrate that
the Appeals officer abused his/her discretion when making the adverse determination which, in effect, denied Mrs.
Reiff's Innocent Spouse Relief request. We do not agree with opposing counsel's assessment, as this matter was already
before the U.S. Tax Court before the Appeals division considered it.  That notwithstanding, we believe that the Appeals
division's non-response to RE: (2) constitutes an abuse of discretion if Mrs. Reiff's request for relief was, in fact, denied
under the circumstances stated by opposing counsel/respondent.

First, we would like to know if the information provided by opposing counsel/respondent in its July 25 communiqué to us
above is true and accurate to the best of your knowledge.  If it is correct, we would like to know why we received this
information from opposing counsel and not from you or someone in your division responsible to determine the Service's
position in this matter.  We would also like to know when and by what means you or somebody else in the Appeals
division notified opposing counsel/respondent of the denial of Mrs. Reiff's request for relief, presuming that opposing
counsel's/respondent's allegations are true.  Finally, we would like to know what specific information, if any, passed
between the Appeals division and opposing counsel/respondent which generated opposing counsel's/respondent's July
25 statement above and why we were not afforded that same information at the same time.

---

EXHIBIT 5-1

Second, if you or any authority in your division has developed a position in this matter, we would like to know exactly what that position is in writing. Please include the rationale and any other information upon which your decision was based. If a position has not yet been formed, we would like to know when we might expect it. Finally, we would like to know specifically who formulated or will formulate the position and the date it actually was or will be made. Please include all pertinent business contact information for the person or people involved.

Third, we would like our questions and concerns in RE: (2) to be fully addressed in writing by you or a responsible authority in your division. Our outlined questions and concerns not only explain our rationale for declining to submit Forms 8857 and 12508, but they also represent other important matters and arguments which will be taken up by the U.S. Tax Court when it resumes the case in the week beginning October 1. It bears repeating that nobody from the Appeals division contested or asked questions from us about anything which we submitted in RE: (2) between December 1, 2011 and the current date, which appears to be contrary to opposing counsel's/respondent's claim in the July 25 communiqué to us that "...Mrs. Reiff was not responsive to the Appeals division when they asked her for information...." It is our position that RE: (2) was responsive to your RE: (1) query and that if it was not, the Appeals division had a legal obligation to present queries or objections to our submission, neither of which you nor anybody else from the division did. We ask that you provide a complete explanation of the Appeals division's position regarding this issue.

Before you respond to this letter, please consult with opposing counsel/respondent Adam Sweet in the Office of Division Counsel (Small Business/Self-Employed). His telephone number is (202) 874-1318 or you may write to him at 455 Massachusetts Avenue, NW, 5th Floor, Washington, DC 20001. Since he already represents the Service in this matter before the U.S. Tax Court, he can provide help and legal advice to you about an appropriate response to this letter.

Your timely reply to this letter is of the essence. Please note that opposing counsel/respondent has requested a meeting with us, and this matter is a principal topic which opposing counsel/respondent would like to discuss. We cannot address this issue with opposing counsel/respondent until we are fully informed about what has actually transpired in your division regarding this matter. You may send your response to the address depicted in the letterhead above. We appreciate your cooperation.

Sincerely,

Amy Reiff

G. Russell Reiff

cc: Adam Sweet; IRS, Office of Division Counsel (Small Business/Self-Employed)

EXHIBIT 5-2